## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CECILE L. CARRIERE, individually and on behalf of all others similarly situated,** | * | **CIVIL ACTION NO. :** |
| | * | |
| | * | |
| **Plaintiffs,** | * | **SECTION:** |
| | * | **JUDGE** |
| **VERSUS** | * | |
| | * | |
| **JACKSON HEWITT TAX SERVICE INC. et al.,** | * | **MAGISTRATE:** |
| | * | **MAGISTRATE JUDGE** |
| **Defendants.** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## NOTICE OF REMOVAL OF CIVIL ACTION

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants Jackson Hewitt Tax Service Inc. and Jackson Hewitt Inc. (collectively, "Jackson Hewitt") hereby notify the Court that Jackson Hewitt is removing the above-captioned case from the Twenty-Second Judicial District Court for the Parish of St. Tammany in the State of Louisiana to the United States District Court for the Eastern District of Louisiana.  In support of this Notice of Removal, Jackson Hewitt states as follows:

1.      This Notice of Removal is based on the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4, codified in relevant part at 28 U.S.C. §§ 1332(d) and 1453 ("CAFA"), which confers original jurisdiction on federal courts for class actions with more than 100 members where the amount in controversy exceeds $5 million and where minimal diversity of citizenship exists.  28 U.S.C. § 1332(d); *see also* 28 U.S.C. § 1453.  CAFA applies to any civil action commenced after February 18, 2005.  *See* 28 U.S.C. § 1332, note.  Because the Court has original jurisdiction over this action, it may be removed pursuant to 28 U.S.C. §§ 1441(a) and 1453(b).

2.      Plaintiff, Cecile L. Carriere ("Ms. Carriere"), filed this action on April 29, 2010, in the Twenty-Second Judicial District Court for the Parish of St. Tammany in the State of Louisiana.  This action was styled as *Cecile L. Carriere, individually and on behalf of all others similarly situated v. Jackson Hewitt Tax Service Inc.; Jackson Hewitt Inc.; and 1040, Inc. d/b/a Jackson Hewitt Tax Service*, Number 2010-12844.   Jackson Hewitt has been served with a Summons and a Class Action Petition for Damages, each of which are attached as Exhibit A.  No other pleadings or materials have been served upon Jackson Hewitt.

3.      Jackson Hewitt was served through its registered agent, Corporation Service Company, when that agent was served with Ms. Carriere's Summons and Petition by personal service on May 11, 2010.

4.      On information and belief, 1040, Inc. was served with Ms. Carriere's Summons and Petition by personal service on May 11, 2010.

5.      This Notice of Removal has been filed within thirty (30) days of service, and therefore this Notice of Removal has been timely filed.  *See* 28 U.S.C. § 1446(b).

6.      Jackson Hewitt has contacted counsel for 1040, Inc. and understands that 1040, Inc. consents to, and joins in this removal.[1]

**Jurisdiction Under the Class Action Fairness Act.**

7.      Under CAFA, "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of costs and interests, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a

---

[1]      Although not required under CAFA, a notice of 1040, Inc.'s consent and joinder to this removal will be filed into the record.

State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  In addition, the proposed class must include at least 100 members.  28 U.S.C. § 1332(d)(5)(B).

### Class Action Containing At Least 100 Members.

8.     On its face, Ms. Carriere's Petition expressly provides that it seeks class status. (*See*, *e.g.*, Pet. at p. 1 and ¶ 58.)

9.     Her Petition further alleges that "[u]pon information and belief, there are more than 100 persons in the class" (*id.* ¶ 63), thereby meeting CAFA's requirement that the proposed class have at least 100 members.  28 U.S.C. § 1332(d)(5)(B).

### Minimal Diversity.

10.     Ms. Carriere alleges that she is a citizen of Louisiana, that Jackson Hewitt Tax Service Inc. "is a Delaware corporation with its princip[al] place of business in Parsippany, New Jersey"; that Jackson Hewitt Inc. "is a Virginia corporation with its princip[al] place of business in Parsippany, New Jersey"; and that 1040, Inc. "is the franchise owner of approximately 16 Jackson Hewitt Tax Service locations throughout Louisiana and Mississippi, including the location at 600 N. Highway 190, Suite 14, Covington, LA 70433."  (Pet. ¶¶ 5, 8-10.)

11.     At the time of the filing of suit and at the time of removal, Jackson Hewitt Tax Service Inc. is and was a citizen of both Delaware and New Jersey, incorporated in Delaware and maintaining its principal place of business in New Jersey.

12.     At the time of the filing of suit and at the time of removal, Jackson Hewitt Inc. is and was a citizen of both Virginia and New Jersey, incorporated in Virginia and maintaining its principal place of business in New Jersey.

13.     At the time of the filing of suit and at the time of removal, upon information and belief, 1040, Inc. is and was a citizen of Louisiana, incorporated and maintaining its principal place of business there.  *See* 28 U.S.C. § 1332(c)(1).

14.     This case meets the minimal diversity of citizenship requirement contained in 28 U.S.C. § 1332(d)(2)(A).  At least one of the putative class members (Ms. Carriere) is a citizen of a State different from that of at least one of the defendants (Jackson Hewitt Tax Service Inc. or Jackson Hewitt Inc.).

**The Amount in Controversy Exceeds $5 Million.**

15.     "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000 . . . ."  28 U.S.C. § 1332(d)(6).

16.     Jackson Hewitt denies that Ms. Carriere is entitled to recovery under any theory, including declaratory and injunctive relief, and will mount vigorous legal and factual defenses with respect to Ms. Carriere's claims and allegations.  However, in determining the amount in controversy, it is necessary to consider all of Plaintiff's allegations as true.  Based on the allegations, the amount in controversy in this action, exclusive of interest and costs, exceeds the jurisdictional amount of $5,000,000, as set forth in 28 U.S.C. §1332(d)(2) and incorporated in 28 U.S.C. §1441(a) and 28 U.S.C. §1453, which allows removal of state court class actions to federal court.

17.     Ms. Carriere alleges seven counts against Jackson Hewitt.  First, Ms. Carriere alleges that Jackson Hewitt was a "loan broker" and did not obtain a license or surety bond or make disclosures required of "loan brokers" by La. Rev. Stat. § 9:3572.1, *et seq*.  (Pet. ¶¶ 64-68.)

Second, Ms. Carriere alleges that Jackson Hewitt was a "loan broker" and did not obtain a surety bond or make disclosures required of "loan brokers" by La. Rev. Stat. § 51:1910, *et seq*. (Pet. ¶¶ 69-74.)  Third, Ms. Carriere alleges that Jackson Hewitt is an "unlicensed loan broker" and did not provide required disclosures and made false or misleading statements or omitted material facts in providing "loan brokering services." (Pet. ¶¶ 75-79.)  Fourth, Ms. Carriere alleges that, "[p]ursuant to Article 2033," Jackson Hewitt must "return all fees, sums, interests and other charges . . . for [its] loan brokering activity." (Pet. ¶¶ 80-84.)  Fifth, Ms. Carriere alleges that, "[p]ursuant to Article 2299," Jackson Hewitt must "return all [] fees, sums, interests and other charges" received in connection with "loan brokering activity." (Pet. ¶¶ 85-88.)  In her last two claims, Ms. Carriere seeks declaratory and injunctive relief based on her allegations that Jackson Hewitt is a "loan broker." (Pet. ¶¶ 89-92.)

18.     The Petition proposes that a class of plaintiffs consist of Louisiana residents who, "during the 10-year period prior to the filing of the Petition" (April 29, 2010), "received a loan through one or more of the Defendants." (Pet. ¶ 58.)

19.     Among other things, Louisiana's laws governing loan brokers provide as follows: (1) La. Rev. Stat. § 9:3572.12:  "The contracting to receive any fee, interest, or other charge in violation of this Chapter shall result in forfeiture by the loan broker to the benefit of the aggrieved person of the entire fee, plus damages in the amount of twice the fee.  In case the fee has been paid, the person by whom it has been paid may recover from the loan broker the amount of the fee thus paid, plus damages in the amount of twice the fee."  (2) La. Rev. Stat. § 51:1915:  "If a loan broker uses any untrue or misleading statements in connection with a loan brokerage contract, fails to fully comply with the requirements of this Chapter, fails to comply with the terms of the contract or any obligation arising therefrom, or fails to make diligent effort

to obtain or procure a loan on behalf of the prospective borrower, then, upon written notice to the broker, the prospective borrower may void the contract, and shall be entitled to receive from the broker all sums paid to the broker, and recover any additional damages including attorney's fees."  (3) La. Rev. Stat. § 9:3574.9:  "Any borrower injured by a violation of this Part may bring an action for recovery of damages.  Judgment shall be entered for actual damages, but in no case less than the amount paid by the borrower to the loan originator or broker, plus reasonable attorney fees and costs.  A penalty not to exceed three times the amount of actual damages may also be assessed the loan originator or broker and be awarded to the borrower."

20.     In her Petition, Ms. Carriere seeks "all fees, sums, interests [*sic*], and other charges related to loans" she alleges were "brokered" by Jackson Hewitt, over the course of the prior ten years, as well as:  (1) twice those amounts pursuant to Count 1 (*see* Pet. ¶ 68); (2) "additional damages" pursuant to Count 2 (*see* Pet. ¶ 74); (3) three times "all fees, sums, interests, and other charges related to loans" pursuant to Count 3 (*see* Pet. ¶ 79); and (4) attorneys' fees (*see* Pet. ¶¶ 74, 79).  (*See* Pet. ¶¶ 68, 74, 79, 84, 88, 90, 92.)

21.     Jackson Hewitt has reviewed its records and determined that, from April 29, 2000 through December 31, 2006, there were approximately 233,477 refund anticipation loans ("RALs") that consumers in Louisiana obtained from financial institutions, involving actions by or through Jackson Hewitt corporate and franchise-owned locations (the "relevant transactions"). *See* Affidavit of Kevin Linder, at ¶¶ 4-5, attached hereto as Exhibit B.  Between April 29, 2000 through December 31, 2006, Jackson Hewitt received more than $9 million in royalty and

advertising fees and fees earned from national banks in connection with the relevant transactions. *See id.* at ¶¶ 6-7.[2]

22.     Because Ms. Carriere seeks to recover these amounts – and multiples of two or three times these amounts (*see*, *e.g.*, Pet. ¶¶ 68, 79) – Ms. Carriere's Petition has placed more than $5 million in controversy.  The amount in controversy therefore exceeds CAFA's $5 million requirement for this Court to assume jurisdiction of this matter.

23.     In addition, Ms. Carriere alleges that the class is entitled to "a declaratory judgment that Defendants are: (a) required to be licensed and bonded as loan brokers under Louisiana law; (b) required to provide certain loan-broker disclosures to their customers; (c) required to return all fees, sums, interests and other charges related to the loans they brokered"; and (d) "a declaratory judgment that the fee agreements/contracts entered into with Defendants as unlicensed loan brokers are an absolute nullity."  (Pet. ¶ 90.)  Ms. Carriere seeks also "an injunction ordering Defendants to (a) cease brokering any further loans until they obtain a loan broker license and bond; and (b) return all fees, sums, interests, and other charges received related to the loans they brokered."  (Pet. ¶ 92.)

24.     Under CAFA, the amount in controversy may be established "either from the viewpoint of the plaintiff or the viewpoint of the defendant, … regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  S. Rep. No. 109-14, at 42.  When assessing the jurisdictional amount in declaratory relief cases, the Court considers "the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants."  S. Rep. No. 109-14, at 43.  *See also Rasberry v. Capitol County Mut. Fire*

---

[2]     This amount does not include an analysis of amounts earned in connection with the alleged purchase of other financial products as described in the Petition  (*see*, *e.g.*, Pet. ¶ 12 ("Money Now" loans, "Holiday" or "HELP" loans, "Flex" loans, and "iPower" or "iAdvance" loans)).  *See* Exhibit B at ¶ 7.  Nor does it include an analysis of amounts earned between January 1, 2007 and the present in connection with the alleged purchase of financial products described in the Petition, which also represents a portion of the amount in controversy.

*Ins. Co*., 609 F. Supp. 2d 594, 600-601 (E.D. Tex. 2009).  Thus, it is appropriate to add to the more than $9 million in controversy noted above an amount for lost profits and the costs of licensing, bonding, and administrative fees related to compliance with the loan broker statutes. *See* Exhibit B at ¶ 9.

25.     Plaintiffs also seek to recover attorney fees, which are included when calculating the amount in controversy.  *See*, *e.g.*, *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 545 (5th Cir. 2006); *Grant v. Chevron Phillips Chemical Co*., 309 F.3d 864, 876 (5th Cir. 2002).

26.     The total value of this controversy is therefore well in excess of $9 million.

27.     La. Code Civ. Proc. art. 893(A)(1) generally prohibits a plaintiff from pleading a specific dollar amount of damages, but provides that if pleading a specific amount of damages "is necessary to establish…the lack of jurisdiction of federal courts due to insufficiency of damages . . . a general allegation that the claim . . . is less than the requisite amount is **required**." (emphasis added).  Plaintiff chose not to allege, as required under La. Code Civ. Proc. art. 893(A)(1), that the amount in controversy in this case is less than CAFA's jurisdictional threshold of $5 million.

28.     None of the exceptions to the Class Action Fairness Act contained in 28 U.S.C. § 1332(d)(3) through (5) is applicable to this matter.

**<u>Notice of Filing</u>**.

29.     Written notice of the filing of this Notice of Removal is hereby given to all parties.

30.    A Notice of Filing of Notice of Removal will be filed promptly with the Clerk of the Twenty-Second Judicial District Court for the Parish of St. Tammany in the State of Louisiana.

31.    No previous application has been made by defendants Jackson Hewitt Tax Service Inc. or Jackson Hewitt Inc. for this or similar relief.

Respectfully submitted this 9th day of June, 2010,

**McGLINCHEY STAFFORD, PLLC**

*/s/ Gerard E. Wimberly, Jr.*
Gerard E. Wimberly, Jr. (T.A.) La Bar No. 13584
Anthony Rollo, La Bar No. 01133
Dylan M. Tuggle, La Bar No. 31995
12th Floor, 601 Poydras Street
New Orleans, Louisiana  70130
Telephone: (504) 586-1200
Facsimile: (504) 596-2800
Email: gwimberly@mcglinchey.com

Richard L. Brusca (Subject to Admission
*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
E-mail:  Richard.Brusca@skadden.com

***Attorneys for Jackson Hewitt Tax Service Inc.***
***and Jackson Hewitt Inc.***

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading has been forwarded to all counsel of record by the Court's CM/ECF electronic notice system, telecopy transmission, email, hand delivery, or by placing same in the U.S. Mail, postage prepaid, on June 9, 2010.

New Orleans, Louisiana, this 9th day of June, 2010.

_/s/ Gerard E. Wimberly, Jr._
**GERARD E. WIMBERLY, JR.**