SERVE

CECILE L. CARRIERE ET AL

No.   2010-12844 J

## 22nd Judicial District Court
## Parish of St. Tammany

Versus

### Louisiana

JACKSON HEWITT TAX SERVICE INC.

ET AL

TO THE DEFENDANT    JACKSON HEWITT INC. THROUGH AGENT FOR SERVICE OF PROCESS:

CORPORATION SERVICE COMPANY 320 SOMERULOS ST BATON ROUGE LA 70802-6129

You are hereby summoned to comply with the demand contained in the petition of which a true and correct copy (exclusive of exhibits) accompanies this citation, or make an appearance, either by filing a pleading or otherwise, in the 22nd Judicial District Court in and for the Parish of St. Tammany, State of Louisiana, within fifteen (15) days after the service hereof, under penalty of default judgment against you.

Witness the Honorable the Judges of said Court this    29TH    day of    APRIL    A.D. 20    10

*Malise Prieto*, CLERK OF COURT

**A TRUE COPY**

BY:    S/SHANNA WOLFE

*Shanna Wolfe*
DY CLERK 22nd Jud. Dist. Court
ST. TAMMANY PARISH, LA

ISSUED:5/6/10

Attorney    BRYAN C SHARTLE    P01

3850 N CAUSEWAY BLVD STE 200

METAIRIE LA 70002

Received on _____ , 20 _____ , and on the _____ day of _____ , 20 _____ ,

I served a true copy of the within _____ ,

on _____ in person,

at domicile with _____

in _____ Parish, a distance of _____ miles from

the Court House.

_____
Deputy Sheriff

Parish of _____

K-101

### EXHIBIT
### A

101-15

TWENTY-SECOND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO.: **2 0 1 0 - 1 2 8 4 4**                                    DIV. "J"

**CECILE L. CARRIERE,**
*individually and on behalf of all others similarly situated,*

**v.**

**JACKSON HEWITT TAX SERVICE INC.; JACKSON HEWITT INC.; and, 1040, INC.**
**d/b/a JACKSON HEWITT TAX SERVICE**

FILED: ___APR 2 9 2010___                    **S/SHANNA L. WOLFE**
                                                                      DEPUTY CLERK

### CLASS ACTION PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes plaintiff, Cecile L.

Carriere ("Plaintiff"), who, on behalf of herself and all others similarly situated, files this

Class Action Petition for Damages against defendants, Jackson Hewitt Tax Service Inc.

("JHTSI"); Jackson Hewitt Inc. ("JHI"); and, 1040, Inc. d/b/a Jackson Hewitt Tax

Service ("1040") (collectively referred to as "Defendants").

### INTRODUCTION

1.        Defendants are part of the second largest tax preparation organization in the

world, with JHTSI reporting annual revenue of approximately $300 million per year.

2.        Despite Defendants' status as "tax return preparers," Defendants' primary

source of revenue is *not* derived from tax preparation services. Instead, Defendants make

most of their money through brokering very expensive and suspect loans and other

financial products.

3.        Defendants are loan brokers per La. Rev. Stat. §§ 9:3572.1 *and* 51:1910.

However, Defendants are *not* licensed or bonded as Louisiana loan brokers. Nor have

Defendants provided the required loan-broker disclosures. Further, in violation of La.

Rev. Stat. § 9:3574.1, *et seq.*, Defendants have made false and misleading representations

and omitted material facts in the offerring and providing of their loan brokering services.

1

In light of these facts, Defendants are obligated to return all fees, sums, interests, and other charges they received related to the loans they improperly brokered, plus pay liquidated damages, attorneys' fees, and costs.

4.       This action seeks class-wide redress for Defendants' failure to be properly licensed and bonded as loan brokers under Louisiana law; Defendants' failure to provide the loan-broker disclosures required under Louisiana law; Defendants' false and misleading representations and omission of material facts in the offering and providing of their loan brokering services; and, Defendants' improper receipt of fees, sums, interests, and other charges not owed.  Plaintiff and the putative class seek monetary, declaratory, and injunctive relief to remedy Defendants' unlawful practices, plus attorneys' fees and costs.

**PARTIES**

5.       Plaintiff is a Louisiana citizen, residing in Covington, Louisiana.

6.       Defendants are tax return preparers.

7.       In addition to providing tax return services, Defendants also facilitate and broker loans and other financial products.

8.       Upon information and belief, JHTSI is the second largest tax preparation company in the U.S. (behind H&R Block) with approximately 6,800 franchised and company-owned offices throughout the U.S.  JHTSI is a public company traded on the NYSE under the symbol "JTX."  In its 2006 Annual Report, JHTSI reported $275.4 million in total revenue for the fiscal year 2006; in its 2007 Annual Report, JHTSI reported $293.2 million in total revenue for the fiscal year 2007; in its 2008 Annual Report, JHTSI reported $278.5 million in total revenue for the fiscal year 2008; and, in its 2009 Annual Report, JHTSI reported $248.3 million in total revenue for the fiscal year 2009.  Upon information and belief, JHTSI is a Delaware corporation with its principle place of business in Parsippany, New Jersey.

9.     Upon information and belief, JHI is a wholly owned subsidiary of JHTSI and is responsible for franchising the Jackson Hewitt Tax Service brand. JHI is also the owner of Tax Services of America, Inc., a Delaware corporation, which operates the company-owned offices. Upon information and belief, JHI is a Virginia corporation with its principle place of business in Parsippany, New Jersey.

10.    Upon information and belief, 1040 is the franchise owner of approximately 16 Jackson Hewitt Tax Service locations throughout Louisiana and Mississippi, including the location at 600 N. Highway 190, Suite 14, Covington, LA  70433.  1040 alleges that it serves over 9,000 clients per year.  Tom and Daniele Babbitt are the owners and operators of 1040.

## BACKGROUND

11.    Defendants are subject to, and required to be licensed under, the Louisiana loan broker statutes because their brokering activity is **_not_** limited to facilitating "Refund Anticipation Loans" or "RALs."

12.    Defendants have brokered and continue to broker numerous types of loans and other financial products, including RALs; "Money Now Loans"; "Holiday" or "HELP" Loans; "Flex Loans"; and, "iPower" or "iAdvance" Loans or Credit Lines.

13.    As unlicensed loan brokers, Defendants are also subject to La. Rev. Stat. § 9:3574.1, *et seq.*, which prohibits loan brokers from making or using any false or misleading representation or omitting any material fact in the offering or providing of loan brokering services.

## APPLICABLE LAW

14.    There are two loan broker statutes in Louisiana, La. Rev. Stat. § 9:3572.1, *et seq.*, and La. Rev. Stat. § 51:1910, *et seq.*  A third statute, La. Rev. Stat. § 9:3574.1, *et seq.*, regulates *un*licensed loan brokers.

15.    **La. Rev. Stat. § 9:3572.1, *et seq.***  Under the first loan broker statute, a "loan

3

broker" is "any person who, for compensation or the expectation of compensation, obtains or offers to obtain a consumer loan from a third party either for another person domiciled in Louisiana, or for another person wherever domiciled, if the broker is operating in Louisiana." La. Rev. Stat. § 9:3572.1.

16.    "An income tax preparer who is an authorized Internal Revenue Service e-file provider and whose _only_ brokering activity is facilitating refund anticipation loans" is _not_ considered a "loan broker." La. Rev. Stat. § 9:3572.2(B)(9) (emphasis added).  A "refund anticipation loan" is a "loan whereby the creditor arranges to be repaid directly by the Internal Revenue Service from the anticipated proceeds of the debtor's income tax refund." _Id._

17.    "Unless a person has first been licensed by the commissioner [of financial institutions] . . ., he shall not engage in the business of loan brokering[.]"  La. Rev. Stat. § 9:3572.3(A)(1).  Loan brokers must obtain a surety bond or establish a trust account.  _See_ La. Rev. Stat. § 9:3572.8(A).  Loan brokers are also required to provide certain disclosures to consumers.  _See_ La. Rev. Stat. § 9:3572.11.

18.    "The contracting to receive any fee, interest, or other charge in violation of [the statute] shall result in forfeiture by the loan broker to the benefit of the aggrieved person of the entire fee, plus damages in the amount of twice the fee.  In case the fee has been paid, the person by whom it has been paid may recover from the loan broker the amount of the fee thus paid, plus damages in the amount of twice the fee."  La. Rev. Stat. § 9:3572.12(D).

19.    **La. Rev. Stat. § 51:1910, _et seq._**  Under the second loan broker statute, a "loan broker" is "any person, firm, or corporation who, in return for any consideration from any person, promises to:  (i) [p]rocure for such person, or assist such person in procuring a loan _from any third party_, or (ii) [c]onsider whether or not it will make a loan to such person."  La. Rev. Stat. § 51:1910(1)(a).

4

20.     As under the first loan broker statute, per La. Rev. Stat. § 51:1910(1)(b)(xi), "[a]ny income tax preparer who is an authorized Internal Revenue Service e-file provider and whose *only* brokering activity is facilitating refund anticipation loans" is *not* considered a "loan broker" (emphasis added).

21.     Like the first loan broker statute, the second loan broker statute requires all loan brokers to obtain a surety bond or establish a trust account. *See* La. Rev. Stat. § 51:1911. "It shall be unlawful for any loan broker or its agent or employee to collect or attempt to collect any deposit or payment toward a fee where a valid bond . . . is not posted[.]" La. Rev. Stat. § 51:1911(E). And again like the first loan broker statute, the second loan broker statute requires all loan brokers to provide certain disclosures to consumers. *See* La. Rev. Stat. § 51:1914.

22.     A violation of any of the provisions set forth in La. Rev. Stat. § 51:1910, *et seq.*, constitutes a violation of the Louisiana Unfair Trade Practices Statute. *See* La. Rev. Stat. § 51:1915(A).

23.     Moreover, the second loan broker statute also contains the following independent, private cause of action:

> B. If a loan broker uses any untrue or misleading statements in connection with a loan brokerage contract, *fails to fully comply with the requirements of this Chapter,* fails to comply with the terms of the contract or any obligation arising therefrom, or fails to make diligent effort to obtain or procure a loan on behalf of the prospective borrower, then, upon written notice to the broker, the prospective borrower may void the contract, and *shall be entitled to receive from the broker all sums paid to the broker, and recover any additional damages including attorney's fees.*
>
> . . . .
>
> D. The remedies provided herein shall be in addition to any other remedies provided for by law.

La. Rev. Stat. § 51:1915 (emphasis added).

24.     **La. Rev. Stat. § 9:3574.1,** *et seq.*  In pertinent part, the third loan broker statute provides:

5

"Loan originator or broker" means any person, except any . . . consumer loan broker, . . . provided that the person excepted is licensed or registered with and subject to regulation or supervision by an agency of the United States or any state and is acting within the scope of the license, charter, or other permit, who:

> (a) For, or in expectation of, consideration paid by the borrower, directly or indirectly arranges or attempts to arrange, or offers to fund or make a loan of money, a credit card, or a line of credit.

> (b) For, or in expectation of, consideration paid by the borrower, assists or advises a borrower, wherever located, in obtaining or attempting to obtain a loan of money, a credit card, a line of credit, or a related guarantee, enhancement, or collateral of any kind or nature.

La. Rev. Stat. § 9:3574.2(3).

25.    In pertinent part, § 9:3574.3 provides:

No loan originator or broker shall:

> . . . .

> (2) Make or use any false or misleading representations or omit any material fact in the offer or sale of his services, or engage, directly or indirectly, in any act that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a loan originator or broker, notwithstanding the absence of reliance by the buyer.

> (3) Make or use any false or deceptive representation in its business dealings.

La. Rev. Stat. § 9:3574.3(2)-(3).

26.    Section 3574.9 provides the following private cause of action:

A. Any borrower injured by a violation of this Part may bring an action for recovery of damages.  Judgment shall be entered for actual damages, but in no case less than the amount paid by the borrower to the loan originator or broker, plus reasonable attorney fees and costs.  A penalty not to exceed three times the amount of actual damages may also be assessed the loan originator or broker and be awarded to the borrower.

B. Any borrower injured by a violation of this Part may bring an action against the surety bond or trust account, if any, of the loan originator or broker.

C. The remedies provided under this Part are in addition to any other procedures or remedies for any violation or conduct provided for in any other law.

6

La. Rev. Stat. § 9:3574.9.

## FACTS

27.     **Loans Brokered by Defendants**.  At least 4 financial institutions have offered various loans through Defendants, including Santa Barbara Bank & Trust, a division of Pacific Capital Bank, N.A. ("SBB&T"); HSBC Taxpayer Financial Services, Inc. ("HSBC"); Republic Bank & Trust Company ("Republic"); and, MetaBank.

28.     **RALs**.  Defendants define a RAL generally as a loan made by a third party financial institution to a customer, which is secured by a customer's anticipated federal tax refund.

29.     In its 2006 10-K, JHTSI defined a RAL as follows:

> *Refund Anticipation Loans ("RALs")*.  A RAL is a loan made by a third party financial institution to a customer and secured by a customer's anticipated federal tax refund.  The loan amount, less applicable fees and charges, including tax preparation fees, is generally disbursed to the customer within approximately one day from the time the tax return is electronically filed with the IRS.

JHTSI 2006 10-K, at p. 4.

30.     **Money Now Loans**.  According to Defendants, there are 2 types of Money Now Loans, including the Pre-File Money Now Loan and Standard Money Now Loan.  The Pre-File Money Now Loan (sometimes referred to as a "Pay Stub Loan") is generally an unsecured loan made by a third party financial institution based on, among other things, the customer's anticipated federal income tax refund, with proceeds of such loan available on the same day the loan is approved by the financial institution, offered in the month of January based upon a pay stub and without a final tax return being prepared and filed with the IRS at the time.

31.     In contrast, the Standard Money Now Loan is generally an unsecured loan made by a third party financial institution based on, among other things, the customer's anticipated federal income tax refund, with proceeds of such loan available on the same day the loan is approved by the financial institution, with a final tax return being prepared and

filed with the IRS in the same office visit at which the customer applies for such a loan.

32.    In its 2006 "Program Agreement" with HSBC, JHI defined a Money Now

Loan as follows:

> 1.10 "Money Now Loan" shall mean a Money Now Loan (pf) and Money Now Loan (std) collectively.
>
> 1.11 "Money Now Loan (pf)" shall mean a loan by the Originator to an Applicant based on, among other things, the Applicant's anticipated Federal income tax refund, with proceeds of such loan available on the same day the loan is approved by the Originator, offered in the month of January and without a final tax return being prepared and filed with the IRS at the time.
>
> 1.12 "Money Now Loan (std)" shall mean a loan by the Originator to an Applicant based on, among other things, the Applicant's anticipated Federal income tax refund, with proceeds of such loan available on the same day the loan is approved by the Originator, with a final tax return being prepared and filed with the IRS in the same office visit as the Applicant applies for such a loan, or if the Applicant applies prior to the first day of electronic filing, the final tax return being filed on the first day of electronic filing.

HSBC 2006 Program Agreement, at p. 3.

33.    **Holiday or HELP Loans**.  Defendants define a <u>HELP loan</u> generally as an

unsecured loan made by a third party financial institution based on, among other things, the

customer's anticipated federal income tax refund, with proceeds of such loan available on

the same day the loan is approved by the financial institution, offered from November

through December based upon a pay stub and without a final tax return being prepared and

filed with the IRS at the time.

34.    In their training materials, Defendants define a HELP loan as follows:

**HELP® Loan**

The Holiday Express Loan Program® is offered for a limited time in November and December. It provides qualified individuals with a loan of up to $500 with no out-of-pocket expenses*.  It's available to pre-approved, prior-year customers as well as to non-customers who come in to apply for the loan.

Customers who choose to come back to Jackson Hewitt Tax Service at tax time and who qualify for a RAL or ACR can use those proceeds to pay off their HELP loan.

*Subject to qualification.  Maximum loan amount is $575 for pre-approved,*

*prior-year customers; $375 for all other applicants. All fees deducted from loan proceeds. Purchase of tax preparation is not required.*

HELP Loan Summary.

35. **Flex Loans**. Defendants define a Flex Loan as an unsecured short term loan made by a third party financial institution to assist a customer in paying his or her taxes.

36. In their training materials, Defendants describe a Flex Loan as follows:

**Flex Loan**

o     The Flex Loan program allows customers with balances due on their federal tax returns to receive a loan from the bank. This loan will allow the customer to pay off the outstanding balances and any associated preparation fees.

o     The Flex Loan program begins on February 7 and will end on April 15.

o     Customers are required to sign the Flex Loan application at the time the product is requested (prior to transmission to the bank). The applications will be pre-printed and provided to the processing centers for distribution to the individual offices. As a back up, these applications will also print from FOP. However it is imperative that the pre-printed form be used.

o     Results of Flex Loan applications will be available in ProFiler software in three minutes or less.

o     The Flex Loan program will include a counter offer process. For example, a customer has a balance due of $1,000. The request is processed by our banking partner who determines the customer is eligible for a $500 loan. The customer will have the option to either accept this revised amount or decline the loan. If the customer accepts the counter offer, they are still obligated for the federal balance *not covered by the Flex Loan*. The benefit of this change is rather than receiving a denial based on the original balance due amount and creating a poor customer service experience, the customer is approved for having at least a portion of their balance due covered by our loan product.

o     The Flex Loan product will allow loans for the amount of the federal tax balance due plus associated fees up to $7,750.

o     The Flex Loan product will not be offered on any combination of federal tax balance due and associated fees exceeding $7,750.

o     The customer must have a minimum balance due of $200. The minimum loan amount is $300, which includes the balance due amount plus associated fees.

o     Offers payment support for the Farmer and Fisherman deadline on March 1.

o     Tax Prep Fees are included in the loan.

o     Tax Prep Fees are paid to franchisee when the loan is approved (like RAL).

o     Application is sent from within ProFiler (like Money Now.)

o     Pre-printed Loan Agreements supplied by the bank. Back up agreements will print in FOP.

9

- o    Networked environment with an Internet connection is required.
- o    90 days same as cash offering.
- o    Configurable

Flex Loan Summary.

37.   **"iPower" or "iAdvance" Loans or Credit Lines**.  Per Defendants, an iPower Loan is an unsecured loan made by a third party financial institution based on, among other things, the customer's anticipated federal income tax refund, with proceeds of such loan available on a pre-paid debit card on the same day the loan is approved by the financial institution, offered from at least November to early January based upon a pay stub and without a final tax return being prepared and filed with the IRS at the time.

38.   An iAdvance Credit Line is an open-end line of credit offered by Metabank. Defendants represent the credit line is a "short-term loan" that can be accessed through the "iPower Card" and used "when you need a little help between paychecks." *See* iAdvance Credit Line Summary.

39.   **Defendants' Loan Brokering Activity**.   Defendants brokered Pre-File Money Now Loans and HELP Loans (sometimes jointly referred to as the "Pre-Season Loan Products") in 2005 and 2006 through agreements with SBB&T and HSBC.  *See* SBB&T 2006 Program Agreement, at pp. 1-4; HSBC 2006 Program Agreement, at pp. 2-5; 2006 HELP Advertising Materials; SBB&T 2006 HELP Loan Agreement.

40.   Upon information and belief, as of this filing, Defendants continue to broker Pre-File Money Now Loans and similar Pre-Season Loan Products, "pay stub" loans, and Flex Loans.  *See, e.g.,* SBB&T 2007 Program Agreement; HSBC 2007 Program Agreement; Republic 2007 Program Agreement.

41.   On November 17, 2008, JHI entered into an agreement with MetaBank for Defendants to broker iPower or iAdvance Loans or Credit Lines throughout the year.  *See* MetaBank 2008 Amended and Restated Agreement; MetaBank 2008 First Addendum to Amended and Restated Agreement.  The iPower or iAdvance Loans or Credit Lines are

simply "repackaged" and "renamed" Pre-File Money Now Loans or HELP Loans and constitute a Pre-Season Loan Product. The only meaningful difference between an iPower Loan or iAdvance Credit Line and a Pre-File Money Now Loan or HELP Loan is the consumer receiving an iPower Loan or iAdvance Credit Line receives his loan proceeds on a pre-paid debit card, rather than by check.

42.    Under Louisiana law, an income tax preparer who brokers loans is considered a loan broker and subject to the restrictions set forth in La. Rev. Stat. § 9:3572.1, *et seq.*, and La. Rev. Stat. § 51:1910, *et seq.*, **_unless_** the income tax preparer's "**_only brokering activity_** is facilitating refund anticipation loans[.]" La. Rev. Stat. § 9:3572.2(B)(9) (emphasis added); La. Rev. Stat. § 51:1910(1)(b)(xi) (emphasis added). In other words, a tax return preparer who brokers **_only_** RALs is exempt from the restrictions set forth in both loan broker statutes, but, if the tax return preparer brokers a loan other than a RAL, or in addition to a RAL, the tax return preparer **_must be licensed_**. *Id.* Defendants are **_not_** exempt under either loan broker statute with respect to any loans they broker (including RALs) because their brokering activity is **_not_** limited to brokering or facilitating **_only_** RALs. Said another way, Defendants broker and facilitate many types of loans in addition to RALs, so they must be licensed as loan brokers.

43.    Under both statutes, a "refund anticipation loan" is defined as "a loan whereby the creditor arranges to **_be repaid directly by the Internal Revenue Service_** from the anticipated proceeds of the debtor's income tax refund." La. Rev. Stat. § 9:3572.2(B)(9) (emphasis added); La. Rev. Stat. § 51:1910(1)(b)(xi).

44.    The Pre-File Money Now Loans; Holiday or HELP Loans; Flex Loans; and, iPower or iAdvance Loans or Credit Lines Defendants have brokered and facilitated and continue to broker and facilitate are **_not_** "refund anticipation loans" under La. Rev. Stat. § 9:3572.2(B)(9) or La. Rev. Stat. § 51:1910(1)(b)(xi) because none of the creditors providing these loans arrange to be repaid directly from the IRS from the anticipated proceeds of the

11

customer's income tax return. Instead, all of these short-term loans are due on a certain date and are arranged to be repaid directly by the customer.

45.     Defendants are *not* licensed as loan brokers per La. Rev. Stat. § 9:3572.3, even though they are subject to the statute. Defendants have been well aware of their obligation to be licensed as loan brokers. In its 2006 10-K, JHTSI acknowledged "many states . . . have statutes regulating, through licensing and other requirements, the activities of brokering loans and offering credit repair services to consumers as well as local usury laws which could be applicable in certain circumstances." JHTSI 2006 10-K, at p. 7; *see also* p. 9. In its 2007, 2008, and 2009 10-Ks, JHTSI once again acknowledged that it may be subject to state loan broker statutes. *See* JHTSI 2007 10-K, at pp. 8 & 11; JHTSI 2008 10-K, at pp. 8 & 11; JHTSI 2009 10-K, at pp. 7 & 11.

46.     **Defendants' False and Misleading Representations and Material Omissions in the Offering and Providing of Their Loan Brokering Services.** Defendants represent to their customers that they do *not* charge their customers a fee for facilitating the financial products they offer, including RALs; Pre-File Money Now Loans; Holiday or HELP Loans; Flex Loans; iPower or iAdvance Loans or Credit Lines; and, other non-RAL loans.

47.     Defendants' representations are false and misleading.

48.     Defendants charge and receive from their customers various undisclosed fees, sums, and interest for brokering RALs; Pre-File Money Now Loans; Holiday or HELP Loans; Flex Loans; iPower or iAdvance Loans or Credit Lines; and, other non-RAL loans. Some of these fees and sums are paid out of the customers' loan proceeds; and some of these fees and sums are owed regardless of whether a loan is procured.

49.     In addition to the undisclosed fees, sums, and interest received directly from their customers, Defendants also receive undisclosed fees, sums, and interest from the financial institutions that provide the loan products. These fees or "kickbacks" are based

12

upon the loans brokered by Defendants and, ultimately, are passed-down to the customers in the form of increased loan costs.

50.     Defendants do *not* advise their customers of the material fact that they are paid fees or "kickbacks" from the financial institutions providing the loans, which are based upon the number of loans brokered by Defendants.  These fees or "kickbacks" create a financial incentive for Defendants to pressure their customers into obtaining one or more of the many loans they broker. The failure to disclose this fact constitutes a material omission.

51.     Further, Defendants falsely represent to their customers that they have no fiduciary responsibilities regarding the loans they broker to their customers, even though Louisiana law imposes a fiduciary responsibility on Defendants because of their loan brokering activity and requires Defendants to make certain disclosures to their customers.

52.     **Defendants Brokered a RAL to Plaintiff and Made False and Misleading Representations and Omitted Material Facts in the Offering and Providing of Their Loan Brokering Services to Her**.  On or about January 26, 2009, Plaintiff visited the Jackson Hewitt office located at 600 N. Highway 190, Suite 14, Covington, LA 70433.

53.     During the visit, Defendants completed Plaintiff's 2008 tax return and brokered a RAL for Plaintiff.  At the time Defendants brokered the RAL, Plaintiff believed in good faith that Defendants were compliant with all applicable laws and regulations regarding loan brokering, including all licensing, bonding, and disclosure laws.  Plaintiff had no reason to suspect that Defendants were ignoring the law.

54.     Despite Plaintiff's belief, Defendants were *not* licensed or bonded Louisiana loan brokers at the time they brokered the RAL to Plaintiff, even though they were required to be licensed and bonded at the time because because their brokering activity was not limited to simply facilitating RALs. Further, Defendants did *not* provide Plaintiff the disclosures required under the Louisiana loan broker statutes.

13

55.     In addition to the tax preparation fees Plaintiff paid Defendants, Defendants also received other undisclosed fees, sums, and/or interests from Plaintiff for brokering the RAL.  Without Plaintiff's knowledge, these fees, sums, and/or interests were paid-out of Plaintiff's loan proceeds.

56.     At the time Defendants brokered the RAL to Plaintiff, they failed to advise Plaintiff of the material fact that they would receive a fee or "kickback" from the financial institution providing Plaintiff's RAL, which would be based upon the number of loans brokered by Defendants.

57.     Defendants also falsely represented to Plaintiff that they have no fiduciary responsibilities regarding the RAL they brokered to her.

## CLASS DEFINITION

58.     Pursuant to La. Code Civ. Proc. art. 591, *et seq.*, Plaintiff bring this action on behalf of herself and all other persons similarly situated.  Plaintiff proposes the following class definition:  All Louisiana residents who received a loan through one or more of the Defendants during the 10-year period prior to the filing of the Petition for Damages.

## CLASS ISSUES

59.     There are questions of law and fact common to each class member, which predominate over issues peculiar to the class members.  The principal common questions include:

A.      Whether Defendants are loan brokers and required to be licensed and bonded under Louisiana law;

B.      Whether Defendants are required to provide certain loan-broker disclosures to their customers;

C.      Whether Defendants' failure to provide certain loan-broker disclosures to their customers violates La. Rev. Stat. § 9:3574.1, *et seq.*;

D. Whether Defendants' representation to their customers that they do *not* charge their customers a fee for facilitating the loans they offer violates La. Rev. Stat. § 9:3574.1, *et seq.*;

E. Whether Defendants' failure to disclose the amount of the fees, sums, and/or interests they receive out of their customers' loan proceeds violates La. Rev. Stat. § 9:3574.1, *et seq.*;

F. Whether Defendants' failure to disclose to their customers that they are paid fees or "kickbacks" from the financial institutions providing the loans, which are based upon the number of loans brokered by Defendants, violates La. Rev. Stat. § 9:3574.1, *et seq.*;

G. Whether Defendants' representation to their customers that they have no fiduciary responsibilities regarding the loans they broker to their customers violates La. Rev. Stat. § 9:3574.1, *et seq.*;

H. Whether Defendants are obligated to return all fees, sums, interests, and other charges they received related to the loans they brokered, plus pay liquidated damages, attorneys' fees, and costs; and

I. Whether the class members are entitled to declaratory and injunctive relief.

60. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal basis.

61. Plaintiff will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters related to the claims asserted. Plaintiff is similarly situated with, and has suffered similar injuries as, the members of the class she seeks to represent. Plaintiff has retained counsel experienced in handling class action suits involving unfair business practices and consumer law. Neither Plaintiff, nor her counsel, have any antagonistic interest that would inhibit vigorously pursuing this action.

15

62.     A class action is superior to any other available methods for the fair and efficient adjudication of this controversy, particularly considering:

A.     The losses suffered by the class members are such that prosecution of individual actions is impractical or economically infeasible;

B.     The form of proof required is such that prosecution of individual actions is impractical or economically infeasible;

C.     In the absence of the class action device, Plaintiff and the class members will be left without a remedy for the wrongful acts alleged, and Defendants will be unjustly enriched;

D.     The prosecution of separate lawsuits by individual class members would create the risk of inconsistent adjudications, which would establish incompatible standards of conduct for the Defendants, making concentration of the litigation concerning this matter in this Court desirable;

E.     The claims of the representative Plaintiff are typical of the claims of the class; and

F.     No unusual difficulties are likely to be encountered in the management of this action as a class action.

63.     The class is so numerous as to make it impractical to join all members of the class as plaintiffs.  Upon information and belief, there are more than 100 persons in the class.

### COUNT 1:  VIOLATION OF FIRST LOAN BROKER STATUTE<br>(LA. REV. STAT. § 9:3572.1, *ET SEQ.*)

64.     On behalf of herself and the putative class, Plaintiff hereby incorporates, as if written *in extenso*, ¶¶ 1 – 63 in support of this count.

65.     Defendants are loan brokers per La. Rev. Stat. § 9:3572.1 because they, for compensation or the expectation of compensation, obtain or offer to obtain for customers loans from third parties.  Further, Defendants are **not** exempt under the statute because their

brokering activity is **_not_** limited to brokering or facilitating **_only_** RALs. *See* La. Rev. Stat. § 9:3572.2(B)(9).

66.     Defendants have violated the statute by, *inter alia*, failing to: obtain a license; obtain a surety bond or establish a trust account; and, provide the required disclosures. *See* La. Rev. Stat. §§ 9:3572.8(A) and 9:3572.11. Further, Defendants violations are on-going and continuing because Defendants continue to violate the statute by failing to: obtain a license; obtain a surety bond or establish a trust account; and, provide the required disclosures.

67.     In violation of the statute, Defendants have brokered loans (including RALs) to Plaintiff and many others. Defendants wrongfully received certain fees, sums, interests, and other charges from Plaintiff and the class members for their loan brokering activity.

68.     Pursuant to La. Rev. Stat. § 9:3572.12(D), Plaintiff and the class members have a private right of action against Defendants to recover all fees, sums, interests, and other charges Defendants received related to the loans they improperly brokered, plus damages in the amount of twice the total fees Defendants received.

## COUNT 2: VIOLATION OF SECOND LOAN BROKER STATUTE (LA. REV. STAT. § 51:1910, *ET SEQ.*)

69.     On behalf of herself and the putative class, Plaintiff hereby incorporates, as if written *in extenso*, ¶¶ 1 – 68 in support of this count.

70.     Defendants are loan brokers per La. Rev. Stat. § 51:1910 because they, in return for consideration from customers, procure for customers loans from third parties. Further, Defendants are **_not_** exempt under the statute because their brokering activity is **_not_** limited to brokering or facilitating **_only_** RALs. *See* La. Rev. Stat. § 51:1910(1)(b)(xi).

71.     Defendants have violated the statute by, *inter alia*, failing to: obtain a surety bond or establish a trust account; and provide the required disclosures. *See* La. Rev. Stat. §§ 51:1911 and 1914. Further, Defendants violations are on-going and continuing because Defendants continue to violate the statute by failing to: obtain a surety bond or establish a

17

trust account; and provide the required disclosures.

72.    In violation of the statute, Defendants have brokered loans (including RALs) to Plaintiff and many others.  Defendants wrongfully received certain fees, sums, interests, and other charges from Plaintiff and the class members for their loan brokering activity.

73.    Pursuant to La. Rev. Stat. § 51:1915(A), Defendants' actions constitute a violation of the Louisiana Unfair Trade Practices Statute, for which Plaintiff and the class members have a private right of action against Defendants to recover all fees, sums, interests, and other charges Defendants received related to the loans they improperly brokered, plus damages and attorneys' fees.

74.    Further, pursuant to La. Rev. Stat. § 51:1915(B), Plaintiff and the class members have a private right of action against Defendants to recover all fees, sums, interests, and other charges Defendants received related to the loans they improperly brokered, plus damages and attorneys' fees.  On April 20, 2010, Plaintiff, on behalf of herself and the class members, provided Defendants written notice per La. Rev. Stat. § 51:1915(B) of the intent to void all related loan broker contracts.  A copy of the notice is attached as **Exhibit A**.

## COUNT 3:  VIOLATION OF THIRD LOAN BROKER STATUTE (LA. REV. STAT. § 9:3574.1, *ET SEQ.*)

75.    On behalf of herself and the putative class, Plaintiff hereby incorporates, as if written *in extenso*, ¶¶ 1 – 74 in support of this count.

76.    Defendants are unlicensed loan brokers who:  (a) for, or in expectation of, consideration paid by their customers, directly or indirectly arranges or attempts to arrange, a loan of money, a credit card, or a line of credit; and (b) for, or in expectation of, consideration paid by their customers, assists or advises their customers in obtaining or attempting to obtain a loan of money, a credit card, or a line of credit.

77.    Defendants, therefore, are subject to La. Rev. Stat. § 9:3574.1, *et seq.*, which prohibits loan brokers from making or using any false or misleading representation

18

or omitting any material fact in the offering or providing of loan brokering services.

78.     Defendants violated La. Rev. Stat. § 9:3574.1, *et seq.*, by *inter alia*: failing to provide certain loan-broker disclosures to their customers; representing to their customers that they do *not* charge their customers fees for facilitating the loans they offer; failing to disclose the amount of the fees, sums, and/or interests they receive out of their customers' loan proceeds; failing to disclose to their customers that they are paid fees or "kickbacks" from the financial institutions providing the loans, which are based upon the number of loans brokered by them; and, representing to their customers that they have no fiduciary responsibilities regarding the loans they broker.

79.     Pursuant to La. Rev. Stat. § 9:3574.9, Plaintiff and the class members have a private right of action against Defendants to recover all fees, sums, interests, and other charges Defendants received related to the loans they improperly brokered, plus a penalty of three times said amount and attorneys' fees and costs.

## COUNT 4: RESCISSION OF UNLAWFUL FEE AGREEMENT/CONTRACT

80.     On behalf of herself and the putative class, Plaintiff hereby incorporates, as if written *in extenso*, ¶¶ 1 – 79 in support of this count.

81.     La. Civ. Code art. 7 provides "[p]ersons may not by their juridical acts derogate from laws enacted for the protection of the public interest.   Any act in derogation of such laws is an absolute nullity."

82.     The Louisiana loan broker statutes, *i.e.*, La. Rev. Stat. § 9:3572.1, *et seq.*; La. Rev. Stat. § 51:1910, *et seq.*; and, La. Rev. Stat. § 9:3574.1, *et seq.*, are prohibitory laws.   These laws prohibit persons from engaging in unregulated loan brokering activity. As prohibitory laws, the licensing, bond, and disclosure requirements set forth in the loan broker statutes cannot be avoided by private agreement, or otherwise.   Therefore, any fee agreement/contract with Defendants, which permits Defendants to receive a fee for brokering a loan even though Defendants are not in compliance with the loan broker

statutes, is unlawful and subject to rescission as an absolutely null agreement/contract. *See, e.g.*, La. Rev. Stat. § 9:3572.12(D) ("The contracting to receive any fee, interest, or other charge in violation of [the statute] *shall* result in forfeiture by the loan broker to the benefit of the aggrieved person of the entire fee, plus damages in the amount of twice the fee.") (emphasis added).

83.    "An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed.  The parties must be restored to the situation that existed before the contract was made.  If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages." La. Civ. Code art. 2033.

84.    Pursuant to Article 2033, Defendants are obligated to return all fees, sums, interests, and other charges they received from Plaintiff and the class members for their loan brokering activity.

## COUNT 5:  PAYMENT OF A THING NOT OWED

85.    On behalf of herself and the putative class, Plaintiff hereby incorporates, as if written *in extenso*, ¶¶ 1 – 84 in support of this count.

86.    La. Civ. Code art. 2299 provides "[a] person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it."

87.    Defendants were prohibited from contracting to receive and from actually receiving any fee, sum, interest, or other charge for their loan brokering activity. *See* La. Rev. Stat. § 9:3572.12(D); La. Rev. Stat. § 51:1915(B).  La. Rev. Stat. § 51:1911(E) provides "[i]t shall be unlawful for any loan broker or its agent or employee to collect or attempt to collect any deposit or payment toward a fee where a valid bond . . . is not posted[.]"  In summary, Defendants are not owed any fee, sum, interest, or other charge for their loan brokering activity due to their non-compliance with the Louisiana loan broker laws.

20

88.    Defendants received certain fees, sums, interests, and other charges they are not owed relating to their loan brokering activity.  Pursuant to Article 2299, Defendants are obligated to return all such fees, sums, interests, and other charges to Plaintiff and the class members.

## COUNT 6:  DECLARATORY JUDGMENT

89.    On behalf of herself and the putative class, Plaintiff hereby incorporates, as if written *in extenso*, ¶¶ 1 – 88 in support of this count.

90.    Pursuant to La. Code Civ. Proc. art. 1871, *et seq.*, Plaintiff and the class members seek and are entitled to a declaratory judgment that Defendants are:  (a) required to be licensed and bonded as loan brokers under Louisiana law;  (b) required to provide certain loan-broker disclosures to their customers; and, (c) required to return all fees, sums, interests, and other charges received related to the loans they brokered.  Plaintiff and the class members also seek and are entitled to a declaratory judgment that the fee agreements/contracts entered with Defendants as unlicensed loan brokers are an absolute nullity.

## COUNT 7:  INJUNCTION

91.    On behalf of herself and the putative class, Plaintiff hereby incorporates, as if written *in extenso*, ¶¶ 1 – 90 in support of this count.

92.    Pursuant to La. Code Civ. Proc. art. 3601, *et seq.*, Plaintiff and the class members seek and are entitled to an injunction, ordering Defendants to (a) cease brokering any further loans until they obtain a loan broker license and bond; and, (b) return all fees, sums, interests, and other charges received related to the loans they brokered.

## DEMAND FOR TRIAL BY JURY

93.    On behalf of herself and the putative class, Plaintiff demands a trial by jury as to all issues.

21

WHEREFORE, the premises considered, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that Defendants appear and respond as appropriate to this Class Action Petition for Damages, and that judgment be rendered against Defendants, awarding Plaintiff and the class members all damages to which they are entitled, including compensatory, exemplary, special, and punitive damages; all costs; interest from the date of judicial demand; attorneys' fees; and, any other relief, including declaratory and injunctive relief, to which they are entitled.

**PLEASE SERVE THE FOLLOWING THREE DEFENDANTS:**

**1. Jackson Hewitt Tax Service Inc.**
Through Agent for Service of Process
Corporation Service Company
320 Somerulos St.
Baton Rouge, LA 70802-6129

**2. Jackson Hewitt Inc.**
Through Agent for Service of Process
Corporation Service Company
320 Somerulos St.
Baton Rouge, LA 70802-6129

**3. 1040, Inc.**
d/b/a Jackson Hewitt Tax Service
Through Agent for Service of Process
Leonard Babbitt
102 Jane St.
Slidell, LA 70461

Respectfully Submitted,

Bryan C. Shartle (LSBA No. 27640)
David Israel (LSBA No. 7174)
Harold A. Aucoin (LSBA No. 02601)
Justin H. Homes (LSBA No. 24460)
Michael D. Alltmont (LSBA No. 32318)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3850 N. Causeway Blvd.
Lakeway II, Suite 200
Metairie, Louisiana 70002
Telephone: (504) 828-3700
Facsimile: (504) 828-3737

Attorneys for Plaintiff and the Putative Class

N:\1-DI-Non-Collector-Misconduct\Carriers, Cecilia\Pleadings\Final Draft Petition for Damages 04.28.10.doc



A TRUE COPY
DY CLERK 22nd Jud. Dist. Court
ST. TAMMANY PARISH, LA

2010-12844J
**FILED**

APR 29 2010

~~MALISE PRIETO - CLERK~~
S/SHANNA L. WOLFE
DEPUTY



April 20, 2010

RYAN C. SHARTLE
Direct: (504) 846-7917
bshartle@sessions-law.biz

**SESSIONS**
**FISHMAN**
**NATHAN &**
**ISRAEL LLP**
ATTORNEYS AT LAW

Via FedEx

Jackson Hewitt Tax Service Inc.
and Jackson Hewitt Inc.
Through Attorneys
Donna L. Wilson, Esq.
Andrew S. Wein, Esq.
Veronica D. Jackson, Esq.
KELLEY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC  20007-5108

1040, Inc.
d/b/a Jackson Hewitt Tax Service
Through Agent for Service of Process
Leonard Babbitt
102 Jane St.
Slidell, LA  70461

Re:   *Cecile L. Carriere, et al. v. Jackson Hewitt Tax Service Inc., et al.*
        Case No. _____, 22nd J.D.C., Div. "___," Parish of St. Tammany
        Written Notice of Intent to Void Loan Broker Contracts and Demand for Return of
        All Fees, Sums, Interests and Other Charges Paid

To Whom It May Concern:

SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C. represents Cecile L. Carriere and a proposed putative class of similarly situated Louisiana residents who obtained a loan through Jackson Hewitt within the last 10 years.  Enclosed is a draft copy of a Class Action Petition for Damages, which we intend to file if this matter cannot be amicably resolved without litigation.  Please consider the following:

1.      We believe that Jackson Hewitt Tax Service Inc.; Jackson Hewitt Inc.; and, 1040, Inc. d/b/a Jackson Hewitt Tax Service (collectively referred to as "Defendants") are loan brokers under Louisiana law.  *See* La. Rev. Stat. § 9:3572.1, *et seq.*; La. Rev. Stat. § 51:1910, *et seq.*

2.      Per Louisiana law, an income tax preparer who brokers loans is considered a loan broker and subject to the restrictions set forth in the statutes, *unless* the income tax preparer's "*only brokering activity*" is facilitating refund anticipation loans[.]"  La. Rev. Stat. § 9:3572.2(B)(9) (emphasis added); La. Rev. Stat. § 51:1910(1)(b)(xi) (emphasis added).  We believe that Defendants are subject to the Louisiana loan broker statutes because their brokering activity is *not* limited to facilitating *only* "Refund Anticipation Loans" or "RALs."

Lakeway Two   Suite 200   3850 N. Causeway Blvd.   Metairie, Louisiana   70002-7???
(504) 828-3700   (504) 828-3737 F   www.sessions-law.com
LOUISIANA ■   CALIFORNIA ■   COLORADO ■   FLORIDA ■   ILLINOIS ■   NEW YORK ■



EXHIBIT

A

SESSIONS FISHMAN NATHAN & ISRAEL L.L.P.
ATTORNEYS AT LAW

La. Rev. Stat. § 51:1915(B) Notice Letter
4/20/2010 – Page 2

3.     Both statutes define a "refund anticipation loan" as "a loan whereby the creditor arranges to *be repaid directly by the Internal Revenue Service* from the anticipated proceeds of the debtor's income tax refund." La. Rev. Stat. § 9:3572.2(B)(9) (emphasis added); La. Rev. Stat. § 51:1910(1)(b)(xi). We believe that Defendants have brokered and continue to broker numerous types of loans that do *not* constitute a "refund anticipation loan," including, but not limited to: "Money Now Loans"; "Holiday" or "HELP" Loans; "Flex Loans"; and, "iPower" or "iAdvance" Loans or Credit Lines.

4.     We believe that Defendants charge and receive from their customers various undisclosed fees, sums, and interests for brokering the loans. We believe that some of these fees and sums are paid out of the customers' loan proceeds, and some of these fees and sums are *not* wholly contingent on the successful procurement of the loan.

5.     In addition to the undisclosed fees, sums, and interests received directly from their customers, we also believe that Defendants receive undisclosed fees, sums, and interests from the financial institutions that provide the loan products. We believe that these fees or "kickbacks" are based upon the loans brokered by Defendants and, ultimately, are passed-down to the customers in the form of increased loan costs.

6.     Despite the applicability of the Louisiana loan broker statutes to Defendants' business, and the receipt of substantial fees, sums, and interests for their loan brokering activity, we understand that Defendants are *not* licensed as Louisiana loan brokers. We also understand that Defendants have *not* obtained the required surety bond or established a trust account. Nor have Defendants provided the required loan-broker disclosures.

7.     Further, as unlicensed loan brokers, Defendants are also subject to La. Rev. Stat. § 9:3574.1, *et seq.*, which prohibits loan brokers from making or using any false or misleading representation or omitting any material fact in the offering or providing of loan brokering services. We believe that Defendants have violated this statute by, *inter alia*, failing to provide certain loan-broker disclosures to their customers; representing to their customers that they do *not* charge their customers fees for facilitating the loans they offer; failing to disclose the amount of the fees, sums, and/or interests they receive out of their customers' loan proceeds; failing to disclose to their customers that they are paid fees or "kickbacks" from the financial institutions providing the loans, which are based upon the number of loans brokered by them; and, representing to their customers that they have no fiduciary responsibilities regarding the loans they broker.

8.     In light of these facts, we believe that Defendants are obligated to return all fees, sums, interests, and other charges they received related to the loans they improperly

SESSIONS FISHMAN NATHAN & ISRAEL LLP
ATTORNEYS AT LAW

La. Rev. Stat. § 51:1915(B) Notice Letter
4/20/2010 – Page 3

brokered over the past 10 years, plus pay liquidated damages, attorneys' fees, and costs.

9.    Please take notice that, per La. Rev. Stat. § 51:1915(B), we hereby provide this written notice of the intent to void all loan broker contracts between Ms. Carriere or any other proposed class member on the one hand, and any of the Defendants on the other hand.  We also hereby demand return of all fees, sums, interests, and other charges paid to Defendants for their loan brokering activity.

If this matter is not satisfactorily resolved within the next 5 business days, we intend on filing the enclosed lawsuit.  If our understanding of the facts is incorrect, please contact me as soon as possible; otherwise, we will assume that we are correct. Obviously, our goal is to avoid unnecessary litigation.

We appreciate your attention to this matter and hope for an amicable resolution.

Very truly yours,

Bryan C. Shartle

BCS/ct
cc:    David Israel, Esq.            (via email)
       Harold A. Aucoin, Esq.        (via email)
       Justin H. Homes, Esq.         (via email)
       Michael D. Alltmont, Esq.     (via email)

N:\I-DI-Non-Collector-Misconduct\Carriere, Cecile\Correspondence\Ltr. Re. Notice of Cancellation of LB Contracts.04.20.10.doc

RECEIVED

MAY 1 0 2000

EBR SHERIFF'S OFFICE