UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CECILE L. CARRIERE,                          CIVIL ACTION
individually and on behalf of
all others similarly situated


VERSUS                                       NO: 10-1709


JACKSON HEWITT TAX SERVICE                   SECTION: R(1)
INC., *et al.*

<u>**ORDER AND REASONS**</u>

In this action under the Louisiana loan broker statutes and certain articles of the Civil Code, defendants Jackson Hewitt Tax Service Inc. and Jackson Hewitt Inc. (collectively, "Jackson Hewitt") and 1040, Inc. move to dismiss plaintiff's claims on numerous grounds.[1]  For the following reasons, the Court GRANTS IN PART and DENIES IN PART defendants' motions.


**I.    BACKGROUND**

Defendant Jackson Hewitt is the second largest tax preparation company in the United States.  Its franchisee 1040,

---

[1]    R. Docs. 6 & 15.

Inc. owns 16 Jackson Hewitt locations in Louisiana and
Mississippi.  On January 26, 2009, plaintiff Cecile Carriere
visited the Jackson Hewitt location owned by 1040, Inc. in
Covington, Louisiana.  During that visit, defendants completed
plaintiff's 2008 tax return.  Plaintiff alleges that defendants
also brokered a refund anticipation loan ("RAL") for her during
this visit.  An RAL is a loan, secured by a customer's
anticipated tax refund, that is made by a third party financial
institution.  Plaintiff alleges that the defendants acted as loan
brokers but were not licensed and bonded as required by Louisiana
law.  She also alleges that the defendants did not make certain
disclosures that state law requires of loan brokers.  Plaintiff
further contends that defendants received brokering fees that
were paid out of her loan proceeds without her knowledge.  She
also contends that the defendants falsely represented to her that
they did not collect such fees and that they had no fiduciary
duties regarding the loan.

On April 29, 2010, plaintiff filed a class action petition
in state court, on behalf of herself and all Louisiana residents
who received a loan through one or more of the defendants during
the preceding ten-year period.  These loans include transactions
other than RALs, such as short term "Flex Loans" to assist
customers in paying their taxes.  Plaintiff claims that

2

defendants' activities violated three Louisiana loan broker statutes–La. R.S. §§ 9:3572.1, 51:1910, and 9:3574.1, *et seq.*–and multiple articles of the Louisiana Civil Code.  She seeks statutory penalties, rescission of the alleged loan brokering agreements, return of payment of a thing not owed, and injunctive and declaratory relief.

This case was removed to federal court under the Class Action Fairness Act of 2005.  Defendants now move to dismiss the case on numerous state law grounds.


**II.   STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept as true legal

3

conclusions couched as factual allegations.  *Iqbal*, 129 S.Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true.  *Id*.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Twombly*, 550 U.S. at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.  *Lormand*, 565 F.3d at 255-57.  If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.


**III. DISCUSSION**

**A.   "Loan Brokers" Under the Louisiana Statutes**

Defendants contend that they are not loan brokers under the Louisiana statutes and that those statutes therefore do not apply to them.  Each of the three statutes that plaintiff relies upon defines "loan broker" differently, so defendants may be loan

4

brokers for purposes of one statute but not for others.  The
Court will consider each statute in turn.

    1.   <u>La. R.S. § 9:3572.1</u>

Plaintiff has adequately alleged that defendants are loan
brokers for purposes of R.S. 9:3572.1, the statute that plaintiff
relies upon in count one of the petition.  Under that statute, a
loan broker is "any person who, for compensation or the
expectation of compensation, obtains or offers to obtain a
consumer loan from a third party . . . for another person[.]"
This definition requires that the loan broker receive or expect
to receive compensation, but it does not require that the loan
broker receive that compensation from the borrower.

Plaintiff alleges that defendants received fees from lenders
in exchange for brokering loans to their customers.[2]  In the
petition, plaintiff refers to Jackson Hewitt's 2007 Program
Agreement with Santa Barbara Bank & Trust ("SBBT"), the bank that
made the loan to plaintiff.[3]  In deciding a motion to dismiss,
the Court may rely upon documents the plaintiff refers to in the
petition.  *Pechon v. Louisiana Dept. of Health and Hospitals*, 368

---

    [2]    R. Doc. 1, ¶50, 56.

    [3]    *Id.* at ¶40.

F.App'x 606, 610 n.13 (5th Cir. 2010).  The agreement between Jackson Hewitt and SBBT is attached to Jackson Hewitt's motion to dismiss.[4]  In that agreement, Jackson Hewitt promises to "facilitate the offer of [SBBT's] Financial Products to consumers."[5]  In exchange, the agreement provides that SBBT shall pay fees to Jackson Hewitt.[6]  Those fees are compensation for loan brokering under R.S. 9:3572.1, even though they are not paid by the borrower.

Additional provisions of R.S. 9:3572 support the conclusion that a loan broker may receive compensation from the lender rather than the borrower.  First, under R.S. 9:3572.2, an insurance agent or broker is excepted from the definition of "loan broker" when "the compensation received or expected to be received is paid only by the financial institution or insurance premium finance company."  This exception would be unnecessary if a person who does not receive compensation from the borrower would not be considered a loan broker anyhow.  Further, R.S. 9:3572 contains provisions that protect consumers whether or not they have paid fees to the loan broker.  For example, under R.S.

---

[4]     R. Doc. 6, Ex. 1.

[5]     *Id.* at ¶1.2.

[6]     *Id.* at ¶4.1.

9:3572.6(A), a loan broker shall broker a loan only to a lender licensed by the office of financial institutions, unless an exemption applies.  This broad protection supports the conclusion that loan brokers under R.S. 9:3572.1 need not receive compensation from borrowers.  Defendants may therefore be considered loan brokers even though they did not receive compensation from plaintiff.

Jackson Hewitt admits that it received fees from SBBT, but it asserts that it received a flat fee each year and did not receive fees on a per-loan basis.  The 2007 Program Agreement between Jackson Hewitt and SBBT does not specify how the fee is calculated, and the actual fee amounts are redacted.[7]  But even if Jackson Hewitt's assertion is accurate, R.S. 9:3572.1 does not require that a loan broker's fee be calculated by any particular method.  Compensation in the form of a flat yearly fee, if that is indeed how Jackson Hewitt's fee was calculated, may still be considered compensation for purposes of R.S. 9:3572.1.

Defendant 1040, Inc., argues that it was paid nothing by SBBT in exchange for allegedly brokering plaintiff's loan.  On this motion to dismiss, however, the Court lacks the information to determine whether 1040 received any part of the

---

[7]     R. Doc. 6, Ex. 1, at ¶4.1.

7

fees allegedly obtained by Jackson Hewitt.  For present purposes, the Court must assume the truth of plaintiff's allegation that defendants, generally, received those fees.[8]

Defendants argue that even if they received compensation, they did not actually engage in any loan brokering activities. The petition alleges, however, that defendants obtained a loan for plaintiff, although it does not use those precise words. Obtaining a loan for another person constitutes loan brokering activities under R.S. 9:3572.1.  Further, in the 2007 Program Agreement between Jackson Hewitt and SBBT, Jackson Hewitt promises to "facilitate the offer of [SBBT's] Financial Products to consumers" at its corporate and franchisee locations.[9]  In particular, Jackson Hewitt agrees to conduct advertising, prepare forms, provide computer equipment, maintain and train personnel, and take other actions "as reasonably necessary to advertise and accommodate the facilitation of Financial Products to Applicants[.]"[10]  Jackson Hewitt also agrees to require participating locations to have loan applicants complete and sign an application form developed by SBBT and reviewed by Jackson

---

[8]     R. Doc. 1, ¶55.

[9]     *Id*. at ¶1.2.

[10]    *Id*. at ¶6.

Hewitt.[11]  Plaintiff has adequately alleged that defendants brokered a loan for her, and the agreement that plaintiff refers to in the petition and that defendants have provided only bolsters that allegation.

Defendants also argue that they fall under R.S. 9:3572.2(B)(9), which exempts from the definition of loan broker "[a]n income tax preparer . . . whose only brokering activity is facilitating refund anticipation loans."  The statute defines an RAL as "a loan whereby the creditor arranges to be repaid directly by the Internal Revenue Service from the anticipated proceeds of the debtor's income tax refund."  *Id.*  Plaintiff alleges that defendants brokered an RAL to her, but she also alleges that defendants broker numerous types of loans other than RALs.  According to the petition, the Pre-File Money Now Loans, Holiday or HELP Loans, Flex Loans, and iPower or iAdvance Loans or Credit Lines that defendants broker are not RALs because the creditor is not repaid directly from the IRS from the proceeds of the customer's tax refund.[12]  The petition sets out in detail the characteristics of these various types of loans.[13]  For example,

---

[11]    *Id.* at ¶6.1.

[12]    R. Doc. 1, ¶48.

[13]    *Id.* at ¶30-38.

"Flex Loans" are unsecured short term loans made by a third party financial institution to assist a customer in paying his or her taxes.[14]  Plaintiff adequately alleges that brokering RALs is not defendants' "only brokering activity" and that the exclusion therefore does not apply.

Defendants also argue more generally that the loan broker statute is wholly inapplicable because some of its provisions would not make sense as applied to plaintiff's RAL transaction. Further, defendants note that a law that has not yet gone into effect would explicitly regulate RALs.[15]  But the Court must apply existing law to this case, pending legislation notwithstanding.  Defendants' general arguments about the applicability of the statute do not justify dismissing plaintiff's claims.

Plaintiff has adequately alleged that defendants obtained a loan for her, received compensation from the lender, and do not fall within the exception for tax preparers who broker only RALs. The agreement between Jackson Hewitt and SBBT, which plaintiff refers to in the petition, does not disprove these allegations. Plaintiff's allegations that defendants are loan brokers for

---

[14]     *Id.* at ¶35.

[15]     Louisiana Tax Refund Anticipation Loan Act, 2010 La. Acts. 975, to be codified at R.S. § 9:3579.1 *et seq.*

10

purposes of R.S. 9:3572.1 are sufficient to survive these motions to dismiss.

    2.  <u>La. R.S. § 51:1910</u>

"Loan broker" is defined differently in La. R.S. § 51:1910(1)(a), the statute that plaintiff relies upon in count two of the petition.  Under that statute, a loan broker is defined as:

> any person, firm, or corporation who, in return for any consideration from any person, promises to: (i) Procure for such person, or assist such person in procuring a loan from any third party, or (ii) Consider whether or not it will make a loan to such person.

For defendants to be considered loan brokers under this statute, consideration from the borrower is clearly required. Consideration is generally defined as "the price bargained and paid for a promise — that is, something given in exchange for the promise." 17A Am. Jur. 2d Contracts § 102 (2010). "The element of exchange" is at the heart of the concept of consideration. Restatement (Second) of Contracts § 17 cmt. d (1981). Consideration must be bargained for, which means that "it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Id.* § 71.

Defendants did not receive consideration from plaintiff in exchange for their alleged loan brokering activities.  Plaintiff

11

asserts that defendants took brokering fees out of her loan proceeds "[w]ithout Plaintiff's knowledge."[16]  Plaintiff's allegations that defendants collected undisclosed loan brokering fees from her are at the heart of her claims.[17]  Indeed, the only way to read the petition is that plaintiff expected to receive defendants' loan brokering services for free.  Even if plaintiff is correct that certain fees that defendants charged her were in fact loan brokering fees, plaintiff admits that she did not know this at the time of the transaction.  Plaintiff does not even contend that she knowingly paid these fees to defendants in exchange for defendants' promise to perform loan brokering services.  Nor does plaintiff contend that she gave defendants any other consideration in exchange for brokering the loan.  Therefore, under plaintiff's factual scenario, she did not pay consideration to defendants in exchange for loan brokering services.

Plaintiff also alleges that SBBT, the bank that made the loan to her, paid fees to defendants to induce them to broker loans to their customers.[18]  R.S. 51:1910 requires that the

---

[16]    R. Doc. 1, ¶55.

[17]    *Id.* at ¶46, 48 & 55.

[18]    *Id.* at ¶56.

consideration be paid by the person for whom the loan is brokered, however, so fees paid by the bank are not relevant to whether defendants are loan brokers under this provision. Without having received consideration from plaintiff for their brokering services, defendants are not loan brokers under R.S. 51:1910(a)(1).  Plaintiff's claim under count two is therefore DISMISSED.

### 3.  La. R.S. § 3574.2

For the same reasons that apply to R.S. 51:1910, defendants are not loan brokers under R.S. 9:3574.2(3), which plaintiff relies upon in count three of the petition.  Under R.S. 9:3574.2(3), a loan broker or originator is a person who "[f]or, or in expectation of, consideration paid by the borrower," arranges a loan, or assists or advises a borrower in obtaining a loan.[19]  Plaintiff asserts that she did not know that defendants were taking brokering fees out of her loan proceeds, so she could not have paid consideration in exchange for defendants' alleged loan brokering services.[20]

Plaintiff argues that even if she did not actually pay

---

[19]   The definition also encompasses other activities that are not relevant here.

[20]   R. Doc. 1, ¶55.

13

consideration, defendants still arranged the loan "in expectation of . . . consideration paid by the borrower" under R.S. 9:3574.2(3).  This portion of the statute indicates that when a customer does not initially pay consideration for loan brokering services but expects to do so in the future, the broker is still considered a "loan broker" under the statute.  That is not the case here, however.  By her own admission, plaintiff did not contemplate that she would pay any fees for defendants' loan brokering services.  The "expectation" to which R.S. 9:3574.2(3) refers must be an expectation of consideration, which entails a mutually agreed-upon exchange.  There was no such exchange in this case because plaintiff alleges that she did not expect to pay any loan brokering fees.  Under plaintiff's theory of the case, defendants are not loan brokers under R.S. 9:3574.2(3). Plaintiff's claim under count three is DISMISSED.

**B.   Prescription and Peremption**

Plaintiff has stated a claim under R.S. 9:3572, but defendants contend that the claim is prescribed and perempted under Louisiana law.  The burden of proof generally rests on the party asserting prescription.  *Eastin v. Entergy Corp.*, 03-1030, p. 5 (La. 2/6/04); 865 So.2d 49, 54.  "[I]n the absence of a clear indication of legislative intent, prescriptive statutes

14

which can be given more than one reasonable interpretation should be construed to maintain rather than bar the action." *Taylor v. Liberty Mut. Ins. Co.*, 579 So.2d 443, 446 (La. 1991).  When it is evident from the face of the pleadings that the claim is prescribed, however, the burden shifts to the plaintiff to show that prescription has not run.  *Eastin*, p. 5, 865 So.2d at 54.

### 1.   Sixty-Day Limitation

First, defendants argue that plaintiff's claim under R.S. 9:3572 is barred by the sixty-day time limitation of R.S. 9:3552(E).  Section 9:3552 provides for a private right of action for violations of the Louisiana Consumer Credit Law (LCCL), which includes section 9:3572.  Section 9:3552(E) states: "Any civil action under this section must be brought within sixty days of final payment of the consumer credit contract[.]"  A Louisiana appellate court has held that this limitation is peremptory rather than prescriptive.  *Preferred Inv. Corp. v. Neucere*, 592 So.2d 889, 895 (La. App. 4 Cir. 1991).

Plaintiff does not, however, assert a cause of action under section 9:3552.  Rather, she asserts a distinct causes of action under section 9:3572.12.  Section 9:3552(E) specifically applies to civil actions brought "under this section[.]"  Because plaintiff does not bring any claims under section 9:3552, the

15

sixty-day limitation is inapplicable.

The structure of the LCCL supports the conclusion that the sixty-day limitation does not apply to plaintiff's claims.  The cause of action provided in section 9:3572.12(D) is distinct from section 9:3552.  Section 9:3552 provides a cause of action against an "extender of credit" for "three times the amount of such loan finance charge or credit service charge together with reasonable attorney's fees."  By contrast, section 9:3572.12(D) specifically applies to loan brokers.  It provides that a person who has been charged and has paid a fee "in violation of this Chapter . . . may recover from the loan broker the amount of the fee thus paid, plus damages in the amount of twice the fee."[21] Plaintiff asserts that defendants are loan brokers, not extenders of credit, and she seeks penalties based on the loan broker's fee, not the loan finance charge.  Sections 9:3572.12(D) and 9:3552 contain separate causes of action, which can be brought against separate categories of defendants, and which provide for different penalties.  Plaintiff's claim under section 9:3572.12(D) is not perempted by the sixty-day limitation of section 9:3552(E).

---

[21]     Defendants' argument that there is no private right of action under R.S. 9:3572.12(D) and that only the commissioner of financial institutions may bring an action under that provision is contrary to the express language of the statute.

16

Defendants also argue that plaintiff has not met the notice requirements of R.S. 9:3552(A).  Those requirements, however, apply only to the right to recover "under this subsection[.]" R.S. 9:3552(A)(1)(a).  Because plaintiff is not bringing an action under that subsection, the notice requirements are not applicable.

2.   <u>One-Year Prescriptive Period</u>

Defendants also contend that plaintiff's claim under R.S. 9:3572 has prescribed because she did not file her petition within the one-year period mandated for delictual (<u>i.e.</u> tort) actions.  La. Civ. Code. art. 3492 states: "Delictual actions are subject to a liberative prescription of one year.  This prescription commences to run from the day injury or damage is sustained."  Plaintiff responds by arguing that her claim is not delictual and is not subject to a one-year prescriptive period. Rather, she asserts that her claim is contractual or quasi-contractual and that La. Civ. Code. art. 3499 therefore provides the applicable prescription period.  That article states: "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."  In order to determine whether the applicable prescriptive period is one or ten years, the Court must determine whether plaintiff's claim

17

under R.S. 9:3572 is contractual or delictual in nature.  *Roger v. Dufrene*, 613 So.2d 947, 948 (La. 1993).

In determining whether a cause of action is contractual or delictual, Louisiana courts look to the nature of the duty that has been breached.  *Id.*; *see also Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 479 (5th Cir. 2002) (same); *Harrell v. Fidelity Sec. Life Ins. Co.*, No 07-1439, 2008 WL 170269, at *4 (E.D.La. Jan. 16, 2008) (quoting *Underwriters Ins. Co. v. Offshore Marine Contractors*, 442 F.Supp.2d 325, 333 (E.D.La. 2006)) (determining the source of the duty breached is "key" to deciding which prescriptive period applies).  An injury may give rise to both contractual and delictual claims.  *United Gas Pipe Line Company v. Cargill, Inc.*, 612 So.2d 783, 785-86 (La. App. 1 Cir. 1992); *Davis v. Le Blanc*, 149 So.2d 252, 254 (La. App. 3 Cir. 1963).  The allegations in the petition generally control the true nature of the action and the applicable prescriptive period.  *Starns v. Emmons*, 538 So.2d 275, 277 (La. 1989); *United Gas*, 612 So.2d at 785-86 (observing, however, that courts need not be bound by requests for relief that are unsupported by factual allegations).

Plaintiff's allegations that she had a contract with the defendants, though relevant, are not dispositive of whether her claim is contractual or delictual in nature.  Even when there is

a contract between the parties, the one-year prescriptive period for delictual actions applies if the claim is "actually grounded in tort." *Thomas v. State Employees Group Benefits Program*, 05-0392, p. 5 (La. App. 1 Cir. 3/24/06); 934 So.2d 753, 757 (citing *Trinity Universal Insurance Company v. Horton*, 33,157, p. 2 (La. App. 2 Cir. 4/5/00); 756 So.2d 637, 638)); *see also Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 887 (5th Cir. 2002) (same).  The Court must therefore consider the underlying nature of plaintiff's claim to determine whether it is contractual or delictual.

"The classic distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons." *Thomas*, p. 5, 934 So.2d at 757; *see also Terrebonne Parish School Bd.*, 310 F.3d at 886 (same).  Defendants allegedly violated their statutory duties to obtain a license and bond and to make certain disclosures.  Those duties did not arise from any special obligations that defendants contractually assumed. Rather, those duties are imposed by statute upon loan brokers generally.  Because these duties did not arise from any special obligations that defendants assumed by contract, plaintiff's claim is not contractual in nature.  *See Trinity Universal*

*Insurance Company v. Horton*, 33,157, p. 2 (La. App. 2 Cir. 4/5/00); 756 So.2d 637, 638 (although there was a contract between the parties, claim was delictual because plaintiff did not allege the breach of "any *specific* contract provision") (emphasis in original); *Stephens v. International Paper Co.*, 542 So.2d 35, 39 (La. App. 2 Cir. 1990) (holding that claim was delictual when plaintiff did not allege "the breach of a *special* obligation contractually assumed by the defendant") (emphasis in original).

Plaintiff argues that because she had a contract with the defendants, she and the defendants were not "juridically strangers," as would typically be the case in a tort action. *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 887 n.4 (5th Cir. 2002) (quoting 2 M. Planiol, Treatise on the Civil Law , Nos. 873-74 at 485-86 (11th ed. La. State L. Inst. trans. 1939)). Plaintiff alleges the existence of a contract, but she does not allege that defendants breached that contract. To the contrary, plaintiff alleges that "Defendants completed Plaintiff's 2008 tax return and brokered a RAL for Plaintiff," just as they agreed to do.[22] Again, the mere existence of a contract between the parties does not indicate that an action is

---

[22]    R. Doc. 1, ¶53.

contractual in nature. Plaintiff's damages flow from the breach of general duties, even though those duties cannot be enforced by the entire general public.

In addition, plaintiff argues that a ten-year prescriptive period applies because she seeks contractual remedies. She points to *Fox v. Dupree*, 633 So.2d 612, 614 (La. App. 1 Cir. 1993), in which the court held that a one-year limitations period does not apply to an action under R.S. 51:1915(B). *Fox* is not applicable, however, because the Court has dismissed plaintiff's claim under R.S. 51:1915 on the grounds that defendants are not loan brokers under that statute. Plaintiff maintains a claim under R.S. 9:3572.12(D), but the remedies provided in that section are different from those provided in R.S. 51.1915.

*Fox* considered the remedies available under R.S. 51:1915(A) and (B). Under R.S. 51:1915(A), a person who suffers a violation of that chapter may bring an action under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. § 51:1401 *et. seq.* Such an action is perempted after one year. La. R.S. § 51:1409(E); *Glod v. Baker*, 04-1483, pp. 5-6 (La. App. 3 Cir. 3/23/05); 899 So.2d 642, 646 (citing *Canal Marine Supply, Inc. v. Outboard Marine Corp.*, 522 So.2d 1201, 1203-04 (La. App. 4 Cir. 1988)) (LUTPA limitations period is peremptive rather than prescriptive). Subsection 51:1915(B) provides a remedy that is

21

separate from LUTPA:

> If a loan broker uses any untrue or misleading statements in connection with a loan brokerage contract, fails to fully comply with the requirements of this Chapter, fails to comply with the terms of the contract or any obligation arising therefrom, or fails to make diligent effort to obtain or procure a loan on behalf of the prospective borrower, then, upon written notice to the broker, the prospective borrower may void the contract, and shall be entitled to receive from the broker all sums paid to the broker, and recover any additional damages including attorney's fees.

In *Fox*, the court held that the plaintiff's contractual remedies under R.S. 51:1915(B) were not limited by LUTPA's one-year peremptive period. 633 So.2d at 614. But the court did not indicate that R.S. 51:1915(B) provides only contractual remedies, or that the one-year prescriptive limitation for delictual claims would never apply to an action under that provision. Further, while R.S. 51:1915(B) provides for some contractual remedies, here plaintiff seeks damages under R.S. 9:3572.12(D) beyond any that could be obtained in a breach of contract action. In particular, plaintiff seeks damages in the amount of twice the total fees defendants received.[23] Such remedies cannot be considered contractual in nature. Further, R.S. 9:3572.12(D) mandates "forfeiture" of the loan brokering fee, a term that is not indicative of a limited, contractual remedy. Rather, that

---

[23]    R. Doc. 1, ¶68.

22

provision penalizes loan brokers when they violate the statutory prohibitions.  The remedies plaintiff seeks under R.S. 9:3572.12(D) do not indicate that a ten-year prescriptive period applies.

Additionally, the nature of the requested remedy, though relevant, does not necessarily control whether the underlying duty is contractual or delictual. *Fietz v. Southland Nat. Ins. Co.*, No. 05-0064, 2007 WL 1610772, at *3 (W.D.La. June 1, 2007)). As discussed, the nature of the underlying duty is ultimately determinative.  The duties that plaintiff seeks to enforce are delictual in nature and do not stem from any breach of contract. Plaintiff's claims are therefore limited by a one-year prescriptive period.

Plaintiff contends that the Court should look to analogous provisions of Louisiana law if the applicable prescriptive period is uncertain. *See Dean v. Hercules, Inc.*, 328 So.2d 69, 72 (La. 1976) (looking to analogous articles of the Civil Code to determine prescriptive period under La. Civ. Code arts. 667 and 668).  Because plaintiff does not allege that defendants breached a special obligation assumed by contract, the applicable prescriptive period is clear, and the Court need not look to analogies.

Moreover, even if looking to analogous provisions were

23

necessary, the closest analogies do not favor plaintiff's argument.  Analogous state consumer protection laws are subject to one-year or even shorter limitations periods.  For example, the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1401, *et. seq.*, prohibits a variety of unfair or deceptive acts or practices.  Because plaintiff alleges that defendants engaged in such practices, the private right of action under LUTPA is analogous to plaintiff's claims.  In fact, as part of count two, plaintiff asserts a claim under R.S. § 51:1915(A), which states that a violation of any provision of that chapter constitutes an unfair practice under LUTPA.  The Court has dismissed count two because defendants are not loan brokers under R.S. 51:1910, but plaintiff's purported cause of action under LUTPA is nonetheless closely analogous to her claim under R.S. 9:3572.  Consumers who bring actions under LUTPA often have contracts with the defendants they sue, yet actions under LUTPA are limited by a one-year peremptive period.  La. R.S. § 51:1409(E); *Glod v. Baker*, 04-1483, pp. 5-6 (La. App. 3 Cir. 3/23/05); 899 So.2d 642, 646 (citing *Canal Marine Supply, Inc. v. Outboard Marine Corp.*, 522 So.2d 1201, 1203-04 (La. App. 4 Cir. 1988)) (LUTPA limitations period is peremptive rather than prescriptive).  The close analogy between the private right of action under LUTPA and plaintiff's claim under R.S. 9:3572 suggests that a one-year

24

limitations period applies to plaintiff's remaining statutory claim.

Plaintiff's claim is also analogous to the private right of action under section 9:3552(E) of the Louisiana Consumer Credit Law.  That section provides a cause of action against "extenders of credit" for violations of that chapter, which regulates maximum loan finance charges and provides many other consumer protections.  Under R.S. 9:3552(E), an action "must be brought within sixty days of final payment of the consumer credit contract, or in the case of a revolving loan or revolving charge account, within one year of the date of the violation."  The Court has rejected defendants' argument that this limitation applies to count one, which states a separate cause of action under the LCCL.  Nonetheless, the consumer protections that can be enforced against extenders of credit under R.S. 9:3552(E) are analogous to those that can be enforced against loan brokers under R.S. 9:3572.12(D).  As the Louisiana Fourth Circuit has noted: "This time period, _i.e._, within sixty (60) days of final payment of the consumer credit contract, is shorter than any other prescriptive period in the Civil Code and manifests the legislative intent to have claims arising out of the C.C.L. dealt with quickly." _Preferred Inv. Corp. v. Neucere_, 592 So.2d 889, 895 (La. App. 4 Cir. 1991).  The limitations period of only sixty

days from the final payment of the consumer credit contract under R.S. 9:3552(E) may be very brief (depending upon the length of the contract) and strongly suggests that plaintiff's claim under R.S. 9:3572.12(D) is not subject to a prescriptive period of ten years.

Although looking to additional analogies is unnecessary, the Court notes that numerous causes of actions prescribe after one year despite the existence of contracts between the parties. *See, e.g.*, La. Civ. Code art. 2534 (redhibition); *Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992) (mandatary's negligence); *Roger v. Dufrene*, 613 So.2d 947, 949-50 (La. 1993) (malpractice); *Stephens v. International Paper Co.*, 542 So.2d 35, 39 (La. App. 2 Cir. 1990) (action based on the duty to use a contractually-granted servitude in a proper manner); *Sterling v. Urban Property Co.*, 562 So.2d 1120, 1121 (La. App. 4 Cir. 1990) (sexual harassment claim against landlord's business partner). Even if looking to analogous provisions were necessary, the analogies do not support plaintiff's argument that a ten-year prescriptive period applies in this case.  The Court will apply the one-year prescriptive period of La. Civ. Code. art. 3492 to plaintiff's claim under R.S. 9:3572.

3.    <u>Suspension or Interruption of Prescription</u>

26

The transaction that allegedly injured plaintiff and gave rise to her claims took place on January 26, 2009, but plaintiff did not file her petition until April 29, 2010.[24]  Thus, plaintiff did not file her action within the one-year prescriptive period of article 3492 ("prescription commences to run from the day injury or damage is sustained").  Plaintiff's claims have thus prescribed on the face of the petition, and she has the burden of proving that the running of prescription was suspended or interrupted in some manner.  *Thomas v. State Employees Group Benefits Program*, 05-0392, p. 6 (La. App. 1 Cir. 3/24/06); 934 So.2d 753, 758 (citing *Jonise v. Bologna Brothers*, 01-3230, p. 6 (La. 6/21/02); 820 So.2d 460, 464).  Plaintiff argues that her claims are timely under the "continuing tort" and *contra non valentem* doctrines.  The Court is not persuaded that either of those doctrines are applicable in this case.

### i.   Continuing Tort Doctrine

A prescriptive period may be suspended when a defendant's violations are continuing.  The continuing tort doctrine "requires that the operating cause of the injury be a continuous one which results in continuous damages." *Crump v. Sabine River*

---

[24]    R. Doc. 1.

*Authority*, 98-2326, p. 7 (La. 6/29/99); 737 So.2d 720, 726.
Under the "continuous action" element, "there must be a
continuing duty *owed to the plaintiff* and a continuing breach of
that duty by the defendant." *Id.* at 728 (emphasis added).
Plaintiff has alleged that defendants' violations are "ongoing
and continuing" because defendants are still not licensed and
bonded and have not made the required disclosures.[25] But she has
failed to demonstrate that violations of any duties that the
defendants *owed her* are actually ongoing. *See National Council
on Compensation Ins. v. Quixx Temporary Services, Inc.*, 95-0725
(La. App. 4 Cir. 11/16/95); 665 So.2d 120, 122-23 (breach of duty
to provide correct information on an insurance application was
not continuing misconduct such that prescription was suspended);
*cf. Capitol House Preservation Co. v. Perryman Consultants, Inc.*,
98-1514, p. 8 (La. App. 1 Cir. 12/10/98); 725 So.2d 523, 528
(defendants had an ongoing statutory obligation to disclose prior
violations, and each day that they failed to do so constituted a
new violation); *but see Fox v. Dupree*, 633 So.2d 612, 614 (La.
App. 1 Cir. 1993) (failure to comply with LUTPA constituted
continuing tort). Defendants' actions and failures to act are
tied to a specific event - plaintiff's January 26, 2009 visit to

---

[25]     R. Doc. 1, ¶66.

the Jackson Hewitt office.  Defendants may owe comparable duties to current customers, but there is no reason to believe that they continue to owe any duties to plaintiff.  Allowing plaintiff's claims to linger for as long as defendants fail to meet the alleged requirements would not serve the policy concerns of "promoting legal finality, barring stale claims, and preventing prejudice to defendants" that underlie prescriptive limitations. *Clark v. State Farm Mutual Automobile Ins. Co.*, 00-3010, p. 11 (La. 5/15/07); 785 So.2d 779, 787.

Further, even if defendants meet the continuous action requirement, such action has not resulted in continuous damage to the plaintiff.  Plaintiff claims that she suffered injuries on January 26, 2009 when she entered into a loan brokering contract with defendants.  Plaintiff asserts that defendants wrongfully collected fees from her on that date, but she does not allege that she has suffered any further injuries.  Thus, the continuing tort doctrine is not applicable.  *See Dileo v. Lakeside Hosp., Inc.*, No. 09-2838, 2010 WL 598604, at *3-4 (E.D.La. Feb. 17, 2010) (peremption under LUTPA was not suspended when plaintiff did not allege that nondisclosure caused continuing damages); *cf. Capitol House Preservation Co. v. Perryman Consultants, Inc.*, 98-1514, p. 8 (La. App. 1 Cir. 12/10/98); 725 So.2d 523, 528 (defendants' failure to disclose caused continuing damage when

plaintiff continued to be unable to gain a license to operate a riverboat casino).

### ii. Contra Non Valentem

The doctrine of *contra non valentem* also does not apply in this case.  That doctrine is a judicially-created exception to statutory prescription, and as such it applies only in exceptional circumstances.  La. Civ. Code art. 3467, cmt. d; *Eastin v. Entergy Corp.*, 03-1030, p. 7 (La. 2/6/04); 865 So.2d 49, 55.  The doctrine may apply: "(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant." *Crump v. Sabine River Authority*, 98-2326, p. 13 (La. 6/29/99); 737 So.2d 720, 730.  Plaintiff argues that the third *contra non valentem* category applies because defendant's misrepresentations and omissions prevented her from bringing her claims in a timely

manner.  She also argues that the fourth category applies because she was, until recently, reasonably unaware of the facts underlying her claims.  Neither of these doctrines applies in this case.

Under the fourth category of *contra non valentem*, also known as the "discovery rule," prescription "does not run against one who is ignorant of the facts upon which [her] cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Wimberly v. Gatch*, 93-2361 (La. 4/11/94); 635 So.2d 206, 211-12.  Rather, "prescription commences on the date the injured party discovers or should have discovered the facts upon which [her] cause of action is based." *Eastin*, p. 7, 865 So.2d at 55; *see also Campo v. Correa*, 01-2707, p. 11-12 (La. 6/21/02); 828 So.2d 502, 510-11 (plaintiff's actual or constructive knowledge of facts upon which claim is based causes prescription to run); *Yemelos v. Prudential Ins. Co. of America*, 51 F.3d 1042, 1995 WL 152872, at *2 (5th Cir. 1995) (*contra non valentem* did not suspend prescription when plaintiff received notice of the facts underlying her claim).  The "plaintiff will be deemed to know what [she] could by reasonable diligence have learned." *Renfroe v. State ex rel. Dept. of Transp. and Development*, 01-1646, p. 10 (La. 2/26/02); 809 So.2d 947, 953. The standard for invoking the discovery rule is "exceedingly

31

stringent" and the rule "should be applied only in exceptional circumstances."  *Eastin* at p. 7, 865 So.2d at 55.

Plaintiff asserts that she was ignorant of the facts underlying her claims until over a year after her visit to the Jackson Hewitt office.  She states in her affidavit: "At the time Defendants brokered the loan, I believed that Defendants were compliant with all applicable laws and regulations regarding loan brokering . . . In February 2010, I learned for the first time that Defendants were not licensed or bonded loan brokers."[26] Plaintiff also states that she did not complete college,[27] which may be relevant to the reasonableness of her action or inaction. *See Campo* at p. 12, 828 So.2d at 511 (plaintiff's education is a relevant factor).  Plaintiff further argues that she had no reason to believe that defendants were not complying with the law at the time of her visit.

Plaintiff had actual or constructive knowledge of the facts underlying her claims before she left the Jackson Hewitt office on January 26, 2009.  Plaintiff states in her affidavit that she visited defendants' office for the specific purpose of obtaining

---

[26]    R. Doc. 19, Ex. 3, ¶5.

[27]    *Id.* at ¶3.

a loan relating to her tax return.[28]  Defendants' alleged loan brokering activities came as no surprise to plaintiff.  Further, the Truth in Lending Act disclosure form that plaintiff received when she entered into the loan clearly discloses the eight dollar "check fee" that defendant 1040, Inc. received.[29]  At oral argument, plaintiff relied upon this eight dollar fee in attempting to demonstrate that defendants are loan brokers under Louisiana law.  Thus, at the time she allegedly entered into the contract, plaintiff knew the facts that later led her to claim that defendants acted as loan brokers.  Plaintiff had ample opportunity to examine whether defendants were loan brokers under the Louisiana statutes, to compare any disclosures she received to those required by law, and to investigate whether the defendants were appropriately licensed and bonded.  Plaintiff "may not simply sit on [her] hands and do nothing to investigate . . . and expect [her] actions to be deemed reasonable." *Eastin* at p. 8, 865 So.2d at 56.  Defendants' alleged failures to comply with the loan broker statutes may have been unexpected, but that does not justify applying the discovery rule. *See Renfroe* at p. 10, 809 So.2d at 954 (the unusual fact that two unrelated

---

[28]    R. Doc. 19, Ex. 3, ¶4.

[29]    R. Doc. 6, Ex. 6.

33

entities owned different portions of the same roadway was "reasonably knowable" within the prescriptive period, so the discovery rule did not apply).  Plaintiff was on notice of her potential loan brokering claims before she left the Jackson Hewitt office, and her failure to act on that knowledge for over a year does not justify applying the discovery rule.

The third category of *contra non valentem* also does not apply in this case.  That category may be invoked when "an innocent plaintiff has been lulled into a course of inaction in the enforcement of [her] right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of [her] rights." *Carter v. Haygood*, 04-0646, p. 11 (La. 1/19/05); 892 So.2d 1261, 1269.  In other words, this category applies "when the defendant engages in conduct which prevents the plaintiff from availing [herself] of [her] judicial remedies." *Id.*

Plaintiff has failed to show that defendants' actions lulled her into a course of inaction.  Plaintiff alleges that defendants falsely represented to her that they have no fiduciary responsibilities regarding the loans they broker, but plaintiff has not brought a claim for breach of fiduciary duty.  This allegedly false representation in no way prevented plaintiff from

34

bringing her claims under the loan brokering statutes, and it did not suspend the prescription of plaintiff's claims.

Plaintiff also asserts that defendants failed to perform their legal duty to disclose their loan broker status to her.[30] Plaintiff's claims, however, do not depend upon her having been fully and properly apprised of defendants' alleged status as loan brokers.  To the contrary, if defendants had met the loan broker disclosure, licensing, and bonding requirements, plaintiff would have no claims at all.  As discussed *supra*, plaintiff had sufficient information by the time she left the Jackson Hewitt office to put her on notice of her potential claims.  Defendants did not engage in conduct that prevented plaintiff from availing herself of her legal remedies, and the third category of *contra non valentum* is therefore inapplicable.  Plaintiff's claim under R.S. 9:3572.12(D) has prescribed, and count one of the petition is DISMISSED.[31]

**C.   Civil Code Causes of Action**

   1.   Payment of a Thing Not Owed

---

[30]     R. Doc. 1, ¶66 & 78.

[31]     Because plaintiff's cause of action under R.S. 9:3572.12(D) has prescribed, the Court need not address defendants' argument that plaintiff is not an "aggrieved person" under that provision.

In addition to her statutory loan broker claims, plaintiff asserts a freestanding claim for payment of a thing not owed. Under La. Civ. Code art. 2299, "[a] person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it."  Article 2300 states that "[a] thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist."  Plaintiff argues that the loan brokering fees she paid to the defendants were not owed because they were in violation of the loan brokering statutes.

Plaintiff cannot assert a claim for payment of a thing not owed based on defendants' allegedly illegal loan brokering activities.  A claim for payment of a thing not owed sounds in quasi-contract.  *Onstott v. Certified Capital Corp.*, 05-2548, p. 5 (La. App. 1 Cir. 11/3/06); 950 So.2d 744, 747; *Julien v. Wayne*, 415 So.2d 540, 542 (La. App. 1 Cir. 1982).  In *Fidelity & Deposit Co. of Maryland v. Smith*, 730 F.2d 1026 (5th Cir. 1984), the Fifth Circuit ruled that an obligation is quasi-contractual only if "the action giving rise to it was 'lawful' within the meaning of Article 2293."  *Id.* at 1031; *see also Marine Design, Inc. v. Zigler Shipyards, a Div. of Leevac Corp.*, 791 F.2d 375, 377-78 (5th Cir. 1986) (applying lawfulness requirement to quasi-contractual claim).  The former La. Civ. Code art. 2293 defined a quasi-contract as the "lawful and purely voluntary act of man,

36

from which there results any obligation whatever to a third person."  Article 2293 was "abrogated as unnecessary" by 1995 La. Acts 1041 on the grounds that it was "purely didactic."  In addition to citing article 2293, *Smith* also relied on early Louisiana Supreme Court authority and the civil law commentators. *See Knoop v. Blaffer*, 6 So. 9, 11 (La. 1887) ("the act which gives rise to a *quasi* contract is a lawful act, and therefore is permitted; while the act which gives rise to an offense or *quasi* offense is unlawful, and therefore is forbidden"); Saul Litvinoff, 5 La. Civ. L. Treatise, Law Of Obligations § 1.6 (2d ed. 1969) ("Quasi-contracts are *willful* and *lawful* acts . . . but they give rise to obligations without the concurrence of wills, that is, without the agreement of the persons involved that is necessary for the formation of a contract.  Delicts and quasi-delicts are *unlawful* acts that cause damage, and their unlawfulness is the feature that distinguishes them from the two preceding sources.").  Article 2293 was not abrogated on substantive grounds, and the principle stated in *Smith* that a quasi-contract must be based on a lawful act remains good law.

Plaintiff alleges that defendants' loan brokering activities were unlawful under the Louisiana statutes.  Indeed, that allegation forms the basis of plaintiff's claim for payment of a thing not owed.  Under *Smith*, an unlawful act cannot give rise to

a quasi-contractual obligation.  Thus, plaintiff cannot state a
cause of action for payment of a thing not owed, and count five
of the petition is DISMISSED.


    2.  <u>Rescission</u>

Plaintiff also asserts a freestanding claim for rescission
based on absolute nullity in count four of the petition.  An
"[a]ction for annulment of an absolutely null contract does not
prescribe."  La. Civ. Code art. 2032.  Under article 2030, "[a]
contract is absolutely null when it violates a rule of public
order, as when the object of a contract is illicit or immoral."
Further, an act in derogation of a law "enacted for the
protection of the public interest . . . is an absolute nullity."
La. Civ. Code art. 7.  A null contract "is deemed never to have
existed.  The parties must be restored to the situation that
existed before the contract was made.  If it is impossible or
impracticable to make restoration in kind, it may be made through
an award of damages."  La. Civ. Code art. 2033.

Plaintiff contends that the alleged loan brokering contract
between herself and defendants is absolutely null.  She argues
that a contractor's failure to obtain a license, in violation of
statute, renders a contract to perform the activities that
require a license absolutely null.  *See Tradewinds Environmental*

38

*Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 259
(5th Cir. 2009) (quoting *Hagberg v. John Bailey Contractor*, 435
So.2d 580, 584-85 (La. App. 3 Cir. 1983)) ("Louisiana courts have
long recognized that statutory licensing requirements 'were
enacted to protect an interest vital to the public order,' and
have relied on these Civil Code articles [concerning absolute
nullity] to invalidate contracting agreements entered into with
unlicensed contractors.").  The Court has ruled that defendants
did not violate R.S. 51:1910 and 9:3574.1, *et. seq.*, because they
are not loan brokers under those provisions.  The Court has held,
however, that defendants meet the definition of loan broker under
R.S. 9:3572.1, and R.S. 9:3572.3 requires that loan brokers be
licensed.  Although plaintiff's cause of action under R.S.
9:3572.12(D) has prescribed, defendants have not shown that
plaintiff cannot rely on defendants' alleged violation of R.S.
9:3572.3 as grounds for a nullity action under article 2032.  In
other words, defendants have not shown that if the only source of
a duty (<u>i.e.</u> the duty to register) arises under a statute under
which the direct right of action is prescribed, plaintiff is
barred from resorting to a nullity action to enforce the
statutory duty.

Defendants argue that plaintiff cannot assert any equitable
remedies based on alleged statutory violations.  Defendants cite

*Scott v. American Tobacco Co., Inc.*, 04-2095, p. 9 (La. App. 4 Cir. 2/7/07); 949 So.2d 1266, 1275, among other cases, for the proposition that courts cannot resort to equity when positive law governs the case.  Defendants have not, however, briefed the application of that rule to a claim for rescission on grounds of absolute nullity.  The Court, therefore, will not consider that issue at this time.

Defendants also argue that there is no loan brokering contract between themselves and plaintiff for the Court to rescind, but their arguments are directed solely to whether they are loan brokers under the Louisiana statutes.  Defendants have not addressed whether the alleged loan brokering contract meets the requirements for contract formation under Louisiana law. *See, e.g.*, *Mapp Const., LLC v. Southgate Penthouses, LLC*, 09-0850, p. 26 (La. App. 1 Cir. 10/23/09); 29 So.3d 548, 565 ("cause" rather than "consideration" is required to form a contract under Louisiana law).  Because defendants have not briefed this issue, the Court will not address it at this time. Plaintiff's rescission claim is NOT DISMISSED.


**IV.  CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.  Plaintiff's statutory

claims and claim for payment of a thing not owed are DISMISSED.

Plaintiff's claim for rescission is NOT DISMISSED.


   New Orleans, Louisiana, this __3rd__ day of November, 2010.


                         _____
                                SARAH S. VANCE
                         UNITED STATES DISTRICT JUDGE